06-4580-ag
*Chao Qun Jiang v. BCIS*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2007

(Argued: December 10, 2007             Decided: March 14, 2008)

Docket No. 06-4580-ag

———————————————————————

CHAO QUN JIANG,

*Petitioner*,

—v.—

BUREAU OF CITIZENSHIP AND IMMIGRATION SERVICES,

*Respondent*.

———————————————————————

Before:     POOLER, SACK and SOTOMAYOR*, Circuit Judges*.

———————————————————————

The Board of Immigration Appeals ("BIA") affirmed a decision of the Immigration Judge ("IJ") concluding that petitioner was ineligible for asylum and withholding of removal on the basis of the persecutor bar in 8 U.S.C. § 1158(b)(2)(A)(i) and 8 U.S.C. § 1231(b)(3)(B)(i), because she was found to have assisted in the forced insertion of intrauterine devices ("IUDs"). Consistent with our decision in *Ying Zheng v. Gonzales*, 497 F.3d 201 (2d Cir. 2007), because the BIA has not yet articulated in a precedential decision its position regarding whether and under what conditions involuntary IUD insertion constitutes persecution, and because the BIA has taken inconsistent positions on this issue, we GRANT the petition for review, VACATE the order of the BIA, and REMAND for further proceedings consistent with this opinion.

THEODORE N. COX (Andy Wong, *on the brief*), New York, New York, *for petitioner*.

ADA E. BOSQUE, Attorney, Office of Immigration Litigation, U.S. Department of

Justice (Peter D. Keisler, Assistant Attorney General; Christopher C. Fuller, Senior Litigation Counsel, *on the brief*), Washington, DC, *for respondent*.

SOTOMAYOR, *Circuit Judge*:

Petitioner Chao Qun Jiang ("Jiang") petitions for review of the September 27, 2006 decision by the Board of Immigration Appeals ("BIA") affirming and adopting the January 15, 2003 decision of Immigration Judge ("IJ") Philip L. Morace that denied her application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"),[1] based on a finding that she assisted in the persecution of others and failed to establish a likelihood of torture. *In re Chao Qun Jiang*, No. A78 386 894 (B.I.A. Sept. 27, 2006), *aff'g* No. A78 386 894 (Immig. Ct. N.Y. City Jan. 15, 2003). In addition, the IJ denied Jiang's motion to reopen and remand for consideration of new evidence. *Id*. Jiang principally argues that her activities as an employee of the local family-planning clinic, which included on at least one occasion standing guard over women scheduled to undergo forced insertion of intrauterine devices ("IUDs"), did not amount to assistance in the persecution of others and that she therefore is not subject to the persecutor bar under 8 U.S.C. §§ 1158(b)(2)(A)(i) and 1231(b)(3)(B)(i). Because the BIA has not yet articulated in a precedential decision its position regarding whether and under what conditions involuntary insertion of an IUD constitutes persecution, and because the BIA has taken inconsistent positions on this issue, we proceed consistent with our decision in *Ying Zheng v. Gonzales*, 497 F.3d 201 (2d Cir. 2007), and GRANT the petition for review,

---

[1] United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20 (1988), 1465 U.N.T.S. 85; *see also* 8 C.F.R. § 1208.16(c) (implementing the CAT).

VACATE the order of the BIA, and REMAND for further proceedings consistent with this opinion.

## BACKGROUND

Jiang, a citizen of the People's Republic of China, entered the United States on or about September 25, 2000. On January 2, 2001, she was served with a Notice to Appear and placed in removal proceedings. Jiang conceded removability and applied for asylum, withholding of removal, and relief pursuant to the CAT. The undisputed facts below are taken from Jiang's testimony before the IJ, as well as documents submitted with her application for relief.

Prior to leaving China, Jiang worked for approximately ten months at a local family-planning clinic in her village. Although her primary tasks were clerical, including updating household registries and collecting other intake information, on two occasions Jiang worked a night shift where she was tasked with guarding women who had been captured by family-planning authorities and were being held in the clinic overnight to undergo pregnancy examination or a family-planning procedure. Jiang stated that none of the women she was guarding on the first shift were pregnant; instead, she stated that they had "lost their ring[s]" indicating that the IUDs they had been required to insert under the family-planning policies were no longer in place. On the second shift, Jiang was charged with guarding three women, one of whom was seven months pregnant and scheduled to receive a forced abortion, and two others who were scheduled for IUD insertions. The pregnant woman begged Jiang to let her escape, and Jiang ultimately decided to release all three women. Jiang testified that it was a crime for her to release the women, and she fled China to avoid being punished.

Based on this testimony, the IJ concluded, *inter alia*, that Jiang was statutorily ineligible

2

for asylum and withholding of removal for having assisted in the persecution of others by, "on at least one occasion serv[ing] as a guard, essentially, over individuals who were being subjected to the coercive population control policy, including perhaps abortions and sterilizations." In addition, the IJ found that Jiang did not establish that she would more likely than not be tortured if returned to China and denied her application for relief under the CAT.

Jiang appealed to the BIA and, while her appeal was pending, she filed a motion to reopen based on (1) the birth of a second son in the United States, and (2) new evidence of forced sterilization of individuals who have had two children, whether in China or abroad. On December 28, 2004, the BIA affirmed and adopted the IJ's decision insofar as it found Jiang statutorily ineligible for asylum under the persecutor bar and ineligible for relief under the CAT. The BIA also denied Jiang's motion to reopen because she failed to establish *prima facie* eligibility for relief. Jiang filed a petition for review in this Court, but on December 19, 2005, the parties agreed to vacate and remand to the BIA for clarification regarding, *inter alia*, "whether an involuntary insertion of an IUD constitutes persecution, and, if not, whether petitioner can be deemed to have assisted or participated in the persecution of others based on petitioner's act of guarding detainees who allegedly had been scheduled to undergo forced IUD insertions."

On remand, the BIA again adopted and affirmed the IJ's decision. It found that Jiang "clearly assisted or participated in the persecution of others by, *inter alia*, standing guard at a 'family planning clinic' in China over detainees who were scheduled to have [IUDs] inserted against their will." The BIA concluded that these actions constituted persecution because:

> Only women who opposed and resisted the Chinese policy of forcible birth

3

control would have been detained. Only women who opposed or partially opposed that policy would have IUDs forcibly inserted. Those women resisted the coercive population control of the Chinese government and were persecuted by, at a minimum, the combination of detention, the forcible insertion of IUDs, and the implicit threat of continued similar treatment.

The BIA also affirmed the IJ's decision that Jiang did not establish eligibility for CAT relief based on her alleged fear of persecution in a Chinese prison and her alleged fear of sterilization if returned to China. Finally, the BIA denied Jiang's motion to reopen for consideration of new evidence because the documents did not demonstrate *prima facie* eligibility for relief under the CAT. This petition followed.[2]

## DISCUSSION

"Where, as here, the BIA adopts and affirms the decision of the IJ, and supplements the IJ's decision, we review the decision of the IJ as supplemented by the BIA." *Islam v. Gonzales*, 469 F.3d 53, 55 (2d Cir. 2006). We review *de novo* the legal conclusion that Jiang's actions make her a "persecutor" under the immigration statutes. *See Xu Sheng Gao v. U.S. Att'y Gen.*, 500 F.3d 93, 98 (2d Cir. 2007).

This Court recently remanded a case in which the BIA denied an application for asylum and withholding of removal based on its conclusion that forcible IUD insertion does not constitute persecution. *Ying Zheng v. Gonzales*, 497 F.3d 201, 202 (2d Cir. 2007). The panel in *Ying Zheng* determined that remand was appropriate for two principal reasons. First, the BIA has "not yet opined on this issue in a published, precedential opinion, thus depriving the bench, the bar and potential asylum applicants of guidance concerning whether and how they might

---

[2] This Court has received and considered petitioner's letter containing post-argument authority submitted pursuant to Federal Rule of Appellate Procedure 28(j).

4

approach the issue." *Id.* at 203. Second, the BIA "has taken contrary positions on this issue" by holding in *Ying Zheng* that involuntary insertion of an IUD does not constitute persecution but assuming in at least one other case that it does. *See id.* (citing *Yahong Zheng v. Gonzales*, 409 F.3d 804 (7th Cir. 2005) (stating that the BIA "assumed that the involuntary insertion of IUDs constitutes persecution pursuant to a 'coercive population control program'")). *Ying Zheng* remanded the case to the BIA "so that it might articulate its position concerning whether and under what conditions the forced insertion of an IUD constitutes persecution." *Id.* at 203-04.

We now confront a case in which the BIA has affirmed the IJ's holding that forcible IUD insertion constitutes persecution, at least when accompanied by some period of detention. Because the factual background provided in unpublished BIA opinions is sparse, we are unable to determine whether previous BIA decisions rejected claims of persecution based on forcible IUD insertion because they did not involve allegations of detention.[3] To further the goals of uniformity and fairness that prompted our remand on the same issue in *Ying Zheng*, we remand this case to the BIA for it to articulate a consistent position on "whether and under what conditions forced insertion of an IUD constitutes persecution."[4] *Id.* In doing so, we urge the BIA to apply consistently the standard for what conduct constitutes "persecution" for purposes of establishing refugee status, *see* 8 U.S.C. § 1101(a)(42), and for purposes of determining whether

---

[3] Presumably, any "forcible" insertion of an IUD presupposes a restraint of liberty, if only during the time of the procedure. We therefore question the BIA's basis for considering detention as a separate element of the alleged persecution in this particular case.

[4] Because we remand to the BIA on this basis, we need not address the remaining arguments Jiang raises in her petition for review, namely, whether the IJ and BIA misapplied the burden of proof and whether Jiang's alleged involvement in forced IUD insertion at the family-planning clinic was too remote to constitute assistance in persecution.

an individual who "ordered, incited, assisted, or otherwise participated in" that conduct would be subject to the persecutor bar, *see* 8 U.S.C. §§ 1158(b)(2)(A)(i) & 1231(b)(3)(B)(i), or to explain adequately its reasons for not doing so.[5]  We find it troubling that, in the context of an application for asylum, the BIA concluded that forcible IUD insertion does not constitute persecution, but then applied the persecutor bar to an applicant based on a conclusion that forcible IUD insertion *does* constitute persecution because a period of detention preceded it.

For the foregoing reasons, the petition for review is GRANTED; the decision of the BIA is VACATED; and the case is REMANDED for further proceedings consistent with this opinion.

---

[5]  Indeed, to establish status as a "refugee" under 8 U.S.C. § 1101(a)(42), an alien must demonstrate "persecution or a well-founded fear of persecution on account of" a protected ground.  The same definition of "refugee" excludes "any person who ordered, incited, assisted or otherwise participate in the persecution of any person on account of" a protected ground.  *Id.*  We see no reason why use of the term "persecution" within the same definition of the statute would have two different meanings.  *Cf. U. S. Nat'l Bank of Oregon v. Indep. Ins. Agents of Am.*, 508 U.S. 439, 460 (1993) (requiring party to rebut the presumption that "identical words used in *different* parts of the same act are intended to have the same meaning" (emphasis added) (internal citation omitted)).