06-2477-ag
Leng v. Mukasey

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2007

(Argued: May 21, 2008)                                     Decided: June 6, 2008)

Docket No. 06-2477-ag

HONGSHENG LENG,

       *Petitioner*,

  v.

MICHAEL B. MUKASEY, ATTORNEY GENERAL
OF THE UNITED STATES,[1]

       *Respondent.*

Before: CABRANES, KATZMANN AND B.D. PARKER, *Circuit Judges.*

An immigration judge denied petitioner's applications for asylum, withholding of removal, and relief under the Convention Against Torture. The Board of Immigration Appeals affirmed. We hold that, in order to establish eligibility for relief based exclusively on activities undertaken after his arrival in the United States, an alien must make some showing that authorities in his country of nationality are (1) aware of his activities or (2) likely to become aware of his activities.

The petition for review is granted in part.

> NORMAN KWAI WING WONG, New York, NY, *for Petitioner.*
>
> JANICE K. REDFERN (Peter D. Keisler, Assistant Attorney General, *on the brief*; Linda S. Wernery, *of counsel*), Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, DC, *for Respondent.*

---

[1] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Michael B. Mukasey is automatically substituted for former Attorney General Alberto R. Gonzales as a respondent in this case.

PER CURIAM:

Petitioner Hongsheng Leng seeks review of a decision of an Immigration Judge ("IJ") denying his applications for asylum, withholding of removal, and relief under the Convention Against Torture. *See In re Hongsheng Leng,* No. A 74-154-465 (Immig. Ct. N.Y. City Jan. 6, 2005). The Board of Immigration Appeals ("BIA") adopted and affirmed the IJ's decision. *In re Hongsheng Leng,* No. A 74-154-465 (BIA May 4, 2006). On appeal, Leng contends, *inter alia*, that the record does not support the agency's conclusions that his application for asylum was untimely, he was not a credible witness, and he failed to establish a well-founded fear of persecution.[2] We write to clarify that, in order to establish eligibility for relief based exclusively on activities undertaken after his arrival in the United States, an alien must make some showing that authorities in his country of nationality are (1) aware of his activities or (2) likely to become aware of his activities.

## I. Background

Leng, a native and citizen of the People's Republic of China ("PRC"), entered the United States in April 1995 on a J-1 non-immigrant visa. On January 29, 2004, Leng applied for asylum and withholding of removal based on his political opinions. Specifically, he claimed that (1) he had become involved in the "China Democratic Party" while in the United States, (2) his wife and child, who had remained in the PRC, had been harassed by authorities of the PRC based on his actual and perceived political beliefs, and (3) due to his political activities, he feared harm or mistreatment if returned to the PRC.

---

[2] Leng, relying on 8 C.F.R. § 1208.11, also contends that "[t]he IJ committed reversible legal error" by failing to request comments from the Department of State. Pet. Br. 26-28. This claim has no merit in light of the text of section 1208.11, which clearly provides that requests for comments are discretionary rather than mandatory. *Id.* § 1208.11(c) ("[I]mmigration judges *may* request specific comments from the Department of State regarding individual cases or types of claims under consideration, or such other information as they deem appropriate.") (emphasis added).

We also reject Leng's claim that the IJ failed to comply with the requirements set forth in 8 C.F.R. § 208.18(c)(3). Because the agency's denial of relief was not based on any representations by the Secretary of State, section 208.18(c)(3) is inapplicable to Leng's case. *See id.* § 208.18(c)(1) (providing that "[t]he Secretary of State may forward to the Attorney General assurances that the Secretary has obtained from the government of a specific country that an alien would not be tortured there if the alien were removed to that country"); *id.* § 208.18(c)(3) ("Once assurances are provided under paragraph (c)(2) of this section, the alien's claim for protection under the Convention Against Torture shall not be considered further by an immigration judge, the Board of Immigration Appeals, or an asylum officer.").

Leng, through counsel, conceded his removability at a hearing held on April 20, 2004. At a hearing held on January 6, 2005, Leng presented the IJ with evidence in support of his claims. The documentary evidence Leng submitted included (1) a supplementary affidavit from Leng stating that he did not apply for asylum until 2004 because (a) his claim was based on political activities he had undertaken in the United States from late 2002 onwards and (b) he underwent major surgery in August 2002; (2) a country conditions report issued by the U.S. Department of State; (3) copies of Leng's various postings to the "China Democracy Party" website; (4) photographs documenting Leng's participation in political rallies; (5) a statement, dated January 26, 2004, from the "Executive Chairman" of the "China Democratic Party Organization Development Center," declaring Leng "the executive official" of the China Democratic Party, "Wuhan Committee, Hubei Province," *see* Joint App. 299. Leng's other evidence consisted of his own testimony and the testimony of Xie Wan Jing, a purported CDP[3] official.

Leng testified that he joined the CDP in 2000, following an episode in April of that year where authorities of the PRC—having become aware of his collaboration with Xie on an art exhibit—had arrested his wife and interrogated her about his involvement with a "reactionary organization." *Id.* at 141. According to Leng, he was a "secret party member" until October 1, 2002, when—while still residing in the United States—he formally joined the CDP by publishing an article on the Party's website. *Id.* at 142. Leng stated that he later learned that his wife had been arrested and detained again in the PRC after this episode. Finally, Leng described his participation in various protests in the United States from January 2004 onwards. On the basis of these events,

---

[3] The country conditions report submitted by Leng distinguishes between the "China Democratic Party"—an opposition party based in the PRC—and "the U.S.-based Chinese Democratic Party." Joint App. 193. Leng's documentary evidence, asylum application, and brief on appeal refer to his membership in the "China Democratic Party" and the "China Democracy Party"; his hearing testimony refers to his membership in the "Chinese Democratic Party." *Id.* at 131. At the hearing, Leng's counsel asked how the "Chinese Democratic Party" Leng had joined in the United States was related to China-based party. In response, Leng stated that "the basic princip[les] [were] the same" but he did not know of any Party members or activities in the PRC. *Id.* at 135.

Because the record does not conclusively establish with which organization Leng purported to be affiliated, we use the generic term "CDP" to describe the organization in question.

Leng stated that he was "sure" that authorities of the PRC (1) knew about his political activities and (2) would arrest and persecute him if he returned to the PRC. *Id.* at 140. Leng did acknowledge, however, that—notwithstanding his claimed fear of persecution—he had gone to the PRC consulate in New York, in May 2004, to renew his PRC passport. In response to questions about the discrepancy between the date he claimed to have joined the CDP and the date given on his CDP membership document, Leng explained that the document was dated January 2004 because it had to be reissued following structural changes within the CDP. **[J.A. 149]** Leng also explained that the CDP expected him to recruit members from Hubei Province "in the United States" until such time as the Chinese government "recognized and accepted" the CDP. *Id.* at 151.

Xie, who identified himself as the chairman of the Chinese Democratic Party, testified that Leng had asked to join the CDP in 2000 but was not invited to be a member until 2004. He further testified that the CDP was the "number one, opposing target" of the PRC, and that, given the chance, authorities of the PRC would jail Leng because Leng was "a very active member of [the CDP]." *Id.* at 166, 168. Xie also, however, testified that the government of the PRC did not know the identity of most CDP members.

The IJ noted (1) that Leng and Xie disagreed about when Leng became a member of the CDP, and (2) that Leng's documentation of his participation in the CDP appeared to be contemporaneous with his application for asylum, "clearly indicating that [Leng] appears to have manufactured his political activity in order to suit his asylum claim." *Id.* 113. The IJ also noted that Leng's claim that "the Chinese Government is aware of his membership and his activities" appeared to be in conflict with Leng's testimony "under oath[,] . . . that on two occasions he applied for the renewal of his Chinese passport, first in 1999 and again in 2004 with the Chinese Government here in New York City." *Id.* at 111. As the IJ observed, whether Leng applied for the passports himself—as he first claimed—or "did not go himself to . . . apply for these documents," as he later claimed,

the bottom line is this [petitioner] who claims that he is known as a subversive and dissident in the People's Republic of China was comfortable enough to approach this Government on two different occasions to renew his passport, even though he did not have a pressing need to do so, and was not planning allegedly to travel to the People's Republic of China.

*Id.* at 111-12.

On this basis, the IJ found (1) that Leng was "not credible []or plausible," *id.* 113, (2) that his testimony was not "sufficiently detailed, believable, and consistent to . . . adequate[ly] support . . . his claim[s]," *id.* at 110, and (3) that Leng had "clearly failed to make a showing that he will be subjected to future persecution if forced to return to the People's Republic of China," *id.* at 113-14. The IJ also determined that Leng's August 2002 surgery did not fully justify his failure to apply for asylum until 2004. Accordingly, the IJ concluded that Leng had failed to establish that he qualified for an exception to the one-year filing deadline for asylum set forth in 8 U.S.C. § 1158[4] or was otherwise eligible for relief.

The BIA adopted and affirmed the decision of the IJ. As an initial matter, the BIA determined that the IJ's adverse credibility finding was "supported by the evidence of record." *Id.* at 2. The BIA also determined that, even assuming the veracity of Leng's testimony, Leng had failed to explain adequately why he did not file his asylum application until January 2004—four years after the alleged arrest of his wife and his alleged decision to join the CDP. Finally, the BIA "agree[d] with the Immigration Judge's alternative finding that, even if the asylum application had been timely filed, it must be denied for lack of evidence of past persecution or a well-founded fear of future persecution." *Id.*

## II. Discussion

---

[4] Section 1158(a)(2)(B) provides that an alien must "demonstrate[] by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States." Section 1158(a)(2)(D) provides that an application filed outside this time period "may be considered . . . if the alien demonstrates to the satisfaction of the Attorney General either the existence of changed circumstances which materially affect the applicant's eligibility for asylum or extraordinary circumstances relating to the delay in filing an application within the period specified."

"Where the BIA adopts the decision of the IJ and merely supplements the IJ's decision . . . we review the decision of the IJ as supplemented by the BIA." *Yan Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005). To establish his eligibility for asylum, an alien who does not claim past persecution must establish that he faces a "reasonable possibility of future persecution" based on a statutorily recognized characteristic. *Kyaw Zwar Tun v. INS*, 445 F.3d 554, 565 (2d Cir. 2006) (internal quotation marks omitted); 8 U.S.C. § 1101(a)(42) (including political opinion among these characteristics). To establish his eligibility for withholding of removal, such an applicant "must show that it is more likely than not that []he would suffer future persecution . . . if returned to the country of removal." *Li Hua Lin v. U.S. Dep't of Justice*, 453 F.3d 99, 105 (2d Cir. 2006) (internal quotation marks omitted). Finally, to establish eligibility for relief under the Convention Against Torture ("CAT"), such an applicant must show that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." *Ramsameachire v. Ashcroft*, 357 F.3d 169, 184 (2d Cir. 2004) (quoting 8 C.F.R. § 208.16(c)(2)).

We review the agency's factual findings—including any adverse credibility finding—for substantial evidence, treating these as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). We review the agency's legal conclusions *de novo. See, e.g., Jiang v. Bureau of Citizenship and Immigration Servs.*, 520 F.3d 132, 135 (2d Cir. 2008).

### A. Timeliness of Leng's application for asylum

Leng contends that the IJ did not "fair[ly] assess[] . . . the evidence in the record" when evaluating his claim that changed and extraordinary circumstances justified his failure to apply for asylum within the one-year filing deadline established by 8 U.S.C. § 1158. Pet. Br. 25. On this basis, he contends that the agency "deprived [him] of his due process and constitutional rights to have a full and fair hearing and a meaningful opportunity to be heard." *Id.* at 24.

Looking to the "precise arguments of the petition," we note that Leng's challenge amounts

6

to nothing more than a "conclusory assertion that the [agency] failed to apply the law." *Xiao Ji Chen v. U.S. Dep't of Justice,* 471 F.3d 315, 330 (2d Cir. 2006) (internal quotation marks and brackets omitted). Leng points to nothing in the record suggesting the existence of "fact-finding . . . flawed by an error of law" or discretionary decisionmaking "made without rational justification." *Id.* at 329. Nor does he endeavor to explain how he was deprived of fundamental fairness or otherwise denied a full and fair opportunity to present his claims. In essence, Leng "us[es] the rhetoric of a constitutional claim . . . to disguise what is essentially a quarrel about fact-finding [and] the exercise of discretion." *Id.* at 330 (internal quotation marks omitted). Because we lack jurisdiction "to review decisions under the INA when the petition for review . . .raises neither a constitutional claim nor a question of law," *id.* at 329, we dismiss Leng's petition for review of the agency's determination that his application for asylum should be rejected as untimely.

**B. The agency's adverse credibility determination**

In evaluating the agency's adverse credibility determination, we consider "whether this determination was supported by substantial evidence and based on specific, cogent reasons bearing a legitimate nexus to the determination." *Belortaja v. Gonzales*, 484 F.3d 619, 626 (2d Cir. 2007). The agency may properly base an adverse credibility determination on a discrepancy in the petitioner's evidence if the discrepancy in question goes "to the heart" of petitioner's claim for relief, *see, e.g.*, *Dong v. Ashcroft*, 406 F.3d 110, 112 (2d Cir. 2005) (quoting *Ramsameachire*, 357 F.3d at 182)—that is, if a "'legitimate nexus,' clearly exists between petitioner's claim of persecution and the [discrepancy] giving rise to the IJ's adverse credibility finding," *id.* (quoting *Secaida-Rosales v. INS*, 331 F.3d 297, 307 (2d Cir. 2003)).

Here, the IJ appears to have based her adverse credibility determination on four perceived problems with Leng's evidence. The first was the substantial discrepancy between (1) Leng's claim to have joined the CDP in 2002 and (2) the membership date of 2004 suggested by the other evidence Leng submitted in support of his application—the implication of which, the IJ found, was

7

that Leng had "manufactured his political activity in order to suit his asylum claim." *See* Joint App. 113. The second was the conflict between (1) Leng's claims that he feared persecution by the PRC government on the basis of his CDP membership and political activities and (2) Leng's admission that he visited the PRC consulate in person even after becoming an "open" member of CDP. The third was the perceived inconsistency between (1) Leng's application to remain in the United States and (2) his claim that the CDP had selected him to recruit new members from Hubei Province. The fourth related to inconsistencies and omissions in the testimony and documentary submissions Leng offered regarding his wife's arrest.

Each of the IJ's factual findings was based on record evidence and casts into doubt a claim that bears a close and legitimate relationship with Leng's application for relief. Taken together, these discrepancies provide more than ample support for the IJ's finding that Leng's testimony was neither "credible nor plausible." *Id.* at 113. Our conclusion that the record presents no basis to disturb the agency's adverse credibility determination does not resolve this matter, however, because Leng's application for withholding of removal did not rest on his testimony alone.

**C. Leng's failure to establish his eligibility for withholding of removal**

Because withholding of removal "is mandatory once [an] entitlement is established," *Tun*, 445 F.3d at 565, we review the agency's denial of such relief—essentially, the agency's conclusion that an entitlement has not been established—under the substantial evidence standard, *Saleh v. United States Dep't of Justice*, 962 F.2d 234, 238 (2d Cir. 1992). On appeal, Leng claims that the agency's denial of relief was incorrect in light of record evidence—specifically, "background information on the country condition[s] of China" and testimony by Xie—indicating that "CDP members are subject to severe persecution and torture by the Chinese government." Pet. Br. 21.

When seeking asylum, withholding of removal, or CAT relief, an applicant who has not alleged eligibility on the basis of past persecution must establish a "well founded fear of future persecution." *Tun*, 445 F.3d at 564 (internal quotation marks omitted). To demonstrate that "[his] fear of persecution is well-founded," such an applicant must establish that his putative "persecutor

8

is, or could become, aware of the applicant's possession of the disfavored belief or characteristic." *Id.* at 565. As we have explained, an applicant can make this showing in one of two ways: first, by offering evidence that "he or she would be singled out individually for persecution"; and second, by "prov[ing] the existence of 'a pattern or practice in his or her country of nationality . . . of persecution of a group of persons similarly situated to the applicant' . . . and . . . establish[ing] 'his or her own inclusion in, and identification with, such [a] group.'" *Id.* at 564 (quoting 8 C.F.R. § 208.13(b)(2)(iii)).

Put simply, to establish a well-founded fear of persecution in the absence of any evidence of past persecution, an alien must make some showing that authorities in his country of nationality are either aware of his activities or likely to become aware of his activities. The appropriate burden of proof varies according to the type of relief sought: an applicant must show "a 'clear probability' in the withholding context, and only 'a reasonable possibility' in the asylum context." *Id.* at 565 (quoting *Matter of Mogharrabi*, 19 I. & N. Dec. 439, 446-47 (BIA 1987)).

The IJ, while concluding that Leng had not testified credibly as to his belief that the government of the PRC was aware of his CDP membership and political activities, did not make any specific finding as to whether other evidence in the record supports this claim. Accordingly, we remand this matter for the very limited purpose of allowing the IJ to consider whether authorities of the PRC were (1) aware or (2) likely to become aware of Leng's activities.

### III. Conclusion

For the reasons given above, the petition for review is (1) DISMISSED as to the agency's denial, as untimely, of petitioner's application for asylum and (2) GRANTED as to the agency's determination that petitioner was ineligible for withholding of removal and CAT relief. On remand, the fact-finder should determine whether Leng's documentary evidence and the testimony of Xie indicate that authorities of the PRC were either aware or likely to become aware of Leng's activities.