Li v. Lynch

BIA
Vomacka, IJ
A099 375 885

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 25th day of March, two thousand sixteen.

PRESENT:
> ROBERT A. KATZMANN,
> > *Chief Judge,*
> DEBRA ANN LIVINGSTON,
> DENNY CHIN,
> > *Circuit Judges.*

_____

LIAN LI,
> *Petitioner,*

> v.                                               14-4606
>                                                  NAC

LORETTA E. LYNCH, UNITED STATES
ATTORNEY GENERAL,
> *Respondent.*

_____

FOR PETITIONER:          Joan Xie, Law Office of Joan Xie, New York, N.Y.

FOR RESPONDENT:          Benjamin C. Mizer, Principal Deputy Assistant Attorney General; Ernesto H. Molina, Jr., Assistant Director; Sabatino F. Leo, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, D.C.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Lian Li, a native and citizen of China, seeks review of a December 9, 2014, decision of the BIA affirming a December 17, 2012, decision of an Immigration Judge ("IJ") denying Li's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Lian Li,* No. A099 375 885 (B.I.A. Dec. 9, 2014). We assume the parties' familiarity with the underlying facts and procedural history in this case.

Ordinarily, where the BIA adopts the decision of the IJ, we review the IJ's decision directly. *Yang v. U.S. Dep't of Justice*, 426 F.3d 520, 522 (2d Cir. 2005). Here, however, the BIA rejected the IJ's speculation regarding Li's possible motivations for undergoing abortion procedures. Accordingly, we review "the judgment of the IJ as modified by the BIA's decision," *id.*, and do not consider the IJ's speculation regarding her motivation as part of the agency's adverse credibility determination." *Id.*

The applicable standards of review are well established. We review the IJ's factual findings under the "substantial evidence" standard and will uphold them "if they are supported

2

by 'reasonable, substantial and probative evidence in the record.'" *Weng v. Holder*, 562 F.3d 510, 513 (2d Cir. 2009) (quoting *Zhong v. U.S. Dep't of Justice,* 480 F.3d 104, 116 (2d Cir.2007)); *see also* 8 U.S.C. § 1252(b)(4)(B).

Under the REAL ID Act of 2005, the agency may, in light of "the totality of the circumstances," base an adverse credibility determination on an asylum applicant's "demeanor, candor, or responsiveness," the plausibility of her account, and inconsistencies in her statements, "without regard to whether" those inconsistencies go "to the heart of the applicant's claim." 8 U.S.C. §§ 1158(b)(1)(B)(iii), 1231(b)(3)(C); *Xiu Xia Lin v. Mukasey*, 534 F.3d 162, 165 (2d Cir. 2008). Under the "substantial evidence" standard of review, "[w]e defer . . . to an IJ's credibility determination unless, from the totality of the circumstances, it is plain that no reasonable fact-finder could make such an adverse credibility ruling." *Xiu Xia Lin*, 534 F.3d at 167.

Here, we cannot conclude that the IJ's adverse credibility determination was unreasonable. The IJ found that Li had inflated the frequency of her participation in political activities involving the Democratic Party of China National Committee ("DPCNC"). In both her testimony and amended statement, Li described the democracy group's routine work as follows, giving the impression that she was involved in its

3

regular activities: "[W]e have two significant activities. One is on every Saturday, and then we go to Manhattan Times Square, and then we participate in the Jasmine movement. And then every month, second Tuesday, we go in front of the consulate, and then we participate in the demonstration." However, her participation was limited to attending four protests and authoring three online articles in January, February, and June 2012, all of which occurred shortly after she joined the DPCNC and right before she filed an amended statement with the Immigration Court. She moved to Florida almost immediately after joining the group, and once she filed the amended statement, her activities ceased. Although her exaggerations were not pervasive throughout her testimony, it is not our task to assess "whether, if we were sitting as fact-finders in the first instance, we would credit or discredit an applicant's testimony." *Xiao Ji Chen v. U.S. Dep't of Justice*, 471 F.3d 315, 335 (2d Cir. 2006). We cannot conclude that the IJ's credibility assessment in this instance was unreasonable.

The testimony of the general secretary of the democracy group further supports the reasonableness of the IJ's determination. The IJ found the witness to be "unresponsive" when asked about the connection between his organization and the China Democracy Party, and that he was "interested in

4

avoiding a discussion of how his organization . . . had been formed." The general secretary acknowledged that the organization encouraged members to publish articles in the member's own name to make it "impossible" for them to return to China. The IJ inferred that the true reason for this practice was to form the basis for an asylum claim. This inference was not necessarily unreasonable. *See Siewe v. Gonzales*, 480 F.3d 160, 168-69 (2d Cir. 2007) (providing "speculation that inheres in inference is not 'bald' if the inference is made available to the factfinder by record facts, or even a single fact, viewed in the light of common sense and ordinary experience").

The IJ found that Li did not otherwise rehabilitate her testimony with corroborating evidence. "An applicant's failure to corroborate his or her testimony may bear on credibility, because the absence of corroboration in general makes an applicant unable to rehabilitate testimony that has already been called into question." *Biao Yang v. Gonzales*, 496 F.3d 268, 273 (2d Cir. 2007). Li testified that after moving to Florida she returned to New York to participate in democracy protests. The IJ noted that Li failed to present documentary evidence of that travel (plane or bus tickets).

The IJ also found that Li could not corroborate her allegations of forced abortions. She testified that she was

5

fined for her pregnancy, but did not produce any other evidence regarding the fine. She also failed to submit a statement "from any relative or close friend in China" to corroborate her forced abortion claims.

Although Li submitted a hospital certificate reflecting her second abortion, the 1998 State Department Country Profile of China states that "so-called 'abortion certificates'" are typically given to patients after a voluntary abortion. *See Lin v. Gonzales*, 446 F.3d 395, 400 (2d Cir. 2006). Consistent with this report, it was not unreasonable for the IJ to find it implausible that Li would have received the certificate for an involuntary abortion.

The IJ also found that Li's demeanor weighed against her credibility. "[T]he IJ has the unique advantage among all officials involved in the process of having heard directly from the applicant," and so we generally defer to findings of demeanor. *Zhang v. INS*, 386 F.3d 66, 73-74 (2d Cir. 2004), *overruled on other grounds by Shi Liang Lin v. U.S. Dep't of Justice*, 494 F.3d 296, 305 (2d Cir. 2007). Here, however, we are not convinced that the IJ's assessment of her demeanor is particularly relevant to her overall credibility. The IJ described Li as "dry and low-key" when discussing her abortions and characterized Li as "hesitant, not forthcoming, and evasive" when answering the Government's questions about the

conduct that led to her disorderly conduct conviction involving her work in a massage parlor. Given the inherently personal nature of this questioning, the described demeanor does not strike us as abnormal.

Nonetheless, under the totality of the circumstances, we cannot conclude that the IJ's credibility determination with regards to Li's claims of forced abortions and general participation in activities with the DPCNC was unreasonable. Accordingly, because the IJ credited her testimony about her limited activities with the DPCNC, we must consider whether her participation in the protests and authoring of online articles establish that she would more likely than not be persecuted or tortured in China.

In the absence of evidence of past persecution, Li must "make some showing that authorities in [her] country of nationality are either aware of [her] activities or likely to become aware of [her] activities." *Hongsheng Leng v. Mukasey*, 528 F.3d 135, 143 (2d Cir. 2008) (per curiam). The likelihood of a future event is a finding of fact, *Hui Lin Huang v. Holder*, 677 F.3d 130, 134 (2d Cir. 2012), which we review for substantial evidence, *Xiu Xia Lin*, 534 F.3d at 165.

Here, substantial evidence supports the agency's finding that Li did not show that officials in China are likely to become aware of her political activities. By her own account, those

activities were limited to four demonstrations and three Internet articles. We cannot conclude that the Chinese government is aware or likely to become aware of her participation in the protests, or the articles Li authored online. *See Y.C. v. Holder*, 741 F.3d 324, 334 (2d Cir. 2013) ("[Even assuming] that the Chinese government is aware of every anti-Communist or pro-democracy piece of commentary published online—which seems to us to be most unlikely—[an alien's] claim that the government would have discovered a single article published on the Internet more than eight years ago is pure speculation").

The objective evidence Li provided did not corroborate her claim. The 2011 Country Report on Human Rights described the Chinese government's efforts to crush the banned China Democratic Party and its leaders. However, Li testified that she belonged to a different organization, the DPCNC, which is not expressly banned. Even though the Court has never suggested that "the Chinese government's banning of a pro-democracy organization is a legal prerequisite to a successful asylum claim," nor has our jurisprudence been "intended to restrict the availability of asylum to members of the CDP," *id.* at 333, such a ban "may be probative of the government's awareness of that organization's members and activities," *id.* Here, Li provides no objective evidence that

the Chinese government is aware of the activities of the DPCNC. Moreover, Li did not claim to have any leadership role in the organization, and presented no evidence that its members have been targeted upon their return to China from the United States. Accordingly, this record did not compel the agency to find that it is more likely than not that Li will be persecuted if she returns to China. 8 U.S.C. § 1252(b)(4)(B); *Xiu Xia Lin*, 534 F.3d at 165; 8 C.F.R. § 1208.16(b)(2).

Because the agency reasonably found that Li failed to demonstrate past persecution or a likelihood of future persecution, it did not err in denying both withholding of removal and CAT relief, which were based on the same factual predicate. *See Paul v. Gonzales*, 444 F.3d 148, 156–57 (2d Cir. 2006).

For the foregoing reasons, the petition for review is DENIED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

9