Lin v. Barr

BIA
Loprest, IJ
A205 440 977

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 7th day of August, two thousand twenty.

PRESENT:
    DEBRA ANN LIVINGSTON,
    RAYMOND J. LOHIER, JR.,
    STEVEN J. MENASHI,
        *Circuit Judges.*

_____

BAOGUI LIN,
        *Petitioner,*

        v.                                     18-1715
                                               NAC
WILLIAM P. BARR,
UNITED STATES ATTORNEY GENERAL,
        *Respondent.*

_____

FOR PETITIONER:            Yevgeny Samokhleb, New York, NY.

FOR RESPONDENT:            Joseph H. Hunt, Assistant Attorney
                           General; Holly M. Smith, Senior
                           Litigation Counsel; Christin M.
                           Whitacre, Trial Attorney, Office
                           of Immigration Litigation, United

States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Baogui Lin, a native and citizen of the People's Republic of China, seeks review of a May 21, 2018 decision of the BIA affirming a July 25, 2017 decision of an Immigration Judge ("IJ") denying Lin's application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Baogui Lin,* No. A 205 440 977 (B.I.A. May 21, 2018), *aff'g* No. A 205 440 977 (Immig. Ct. N.Y. City Jul. 25, 2017). We assume the parties' familiarity with the underlying facts and procedural history.

Under the circumstances of this case, we have reviewed the IJ's decision as modified by the BIA. *See Xue Hong Yang v. U.S. Dep't of Justice*, 426 F.3d 520, 522 (2d Cir. 2005). Because the BIA assumed credibility, we assume credibility as to past events and as to Lin's subjective fear of future harm. *See Yan Chen v. Gonzales*, 417 F.3d 268, 271-72 (2d Cir. 2005). The applicable standards of review are well established. *See* 8 U.S.C. § 1252(b)(4)(B); *Y.C. v. Holder*, 741 F.3d 324, 332

(2d Cir. 2013).

Absent past persecution, an alien may establish eligibility for asylum by demonstrating a well-founded fear of future persecution. 8 C.F.R. § 1208.13(b)(2); *Ramsameachire v. Ashcroft*, 357 F.3d 169, 178 (2d Cir. 2004). To do so, an applicant must show either a reasonable possibility that he would be singled out for persecution or that the country of removal has a pattern or practice of persecuting similarly situated individuals. 8 C.F.R. § 1208.13(b)(2)(iii); *see In re A-M-*, 23 I. & N. Dec. 737, 741 (BIA 2005) (pattern or practice of persecution is the "systemic or pervasive" persecution of a group). "[T]o establish eligibility for relief based exclusively on activities undertaken after his arrival in the United States, an alien must make some showing that authorities in his country of nationality are (1) aware of his activities or (2) likely to become aware of his activities." *Hongsheng Leng v. Mukasey*, 528 F.3d 135, 137 (2d Cir. 2008).

As evidence that Chinese authorities are aware of his religious activities in the United States, Lin provided his own statement and testimony, the statement and testimony of a friend in the United States who claimed to have been visiting his parents' home in China when police raided it,

3

and unsworn letters from his cousin and father in China stating that the Chinese authorities knew he had sent a Bible from the United States. Lin was not able to give specific, detailed testimony about Chinese police arresting his cousin. He testified that she had moved away from his home province, that he has not spoken to her in many years, and that he does not know whether she still practices Christianity. He did not know how many times police had come to his parents' home, because he has never asked his parents about it. His witness, who testified that she had been visiting Lin's parents in China when people came to the home looking to arrest Lin, did not know who the individuals were or how long they stayed. She admitted she never had contact with Lin when they both lived in China, does not have his contact information here in the United States, and does not know the name of Lin's parents or siblings she visited in China. The agency reasonably determined that, even assuming credibility, Lin's testimony and statement, and that of his witness, did not provide specific evidence that the Chinese authorities remain interested in Lin and his practice of Christianity.

As for the unsworn letters from Lin's cousin and father in China, we defer to the agency's decision to afford them little weight. *See Y.C.*, 741 F.3d at 334; *see also Hongsheng*

4

*Leng*, 528 F.3d at 143. Further, Lin did not corroborate his assertion that authorities are aware of his religious practice, and thus the agency did not err in finding that assertion speculative. *See Y.C.*, 741 F.3d at 334; *see also Jian Xing Huang v. U.S. INS*, 421 F.3d 125, 129 (2d Cir. 2005) ("In the absence of solid support in the record . . . [an applicant's] fear is speculative at best.").

The agency also reasonably concluded that the evidence and country conditions did not support Lin's claim that there is a pattern or practice of persecuting similarly situated Christians in China. Lin testified that he practices his religion by attending church, spending time with other followers, and reading the Bible. The State Department's 2015 International Religious Freedom Report states that there are approximately 45 million Christians practicing in unregistered churches in China and that authorities in some areas allow unregistered churches to hold services "provided they remained small in scale," although authorities in other areas target and close such churches. *See* Rep. at 3, 14.[1] It further reports that China's State Administration for Religious Affairs policy provides that "family and friends

---

[1] The report is available at https://2009-2017.state.gov/documents/organization/256309.pdf.

have the right to meet at home for worship, including prayer and Bible study, without registering with the government." *Id.* at 6. The country conditions evidence therefore indicates that the religious activities Lin intends to partake in are tolerated, at least in some areas. Moreover, Lin testified he does not know where the underground churches are in China or what area he would go to, that his parents continue to read the Bible at home and have not been harmed in Fujian province, and that his cousin may still practice Christianity in Sichuan Province. Also, Lin testified that he was not aware of specific instances of persecution of Christians returning to China.

Given the large number of Christians practicing in unregistered churches and the fact that the restrictions on their activities varied by region, the agency did not err in determining that Lin failed to demonstrate the systemic or pervasive persecution of similarly situated Christians. *See* 8 C.F.R. § 1208.13(b)(2)(iii); *see also Santoso v. Holder*, 580 F.3d 110, 112 & n.1 (2d Cir. 2009) (upholding denial of pattern or practice claim where evidence reflected that violence was not nationwide and that Catholics in many parts of Indonesia were free to practice their faith); *Jian Hui Shao v. Mukasey*, 546 F.3d 138, 149, 169–70 (2d Cir. 2008)

6

(finding no error in the agency's requirement that an applicant demonstrate a well-founded fear of persecution specific to his or her local area of China when persecutory acts vary according to locality). Accordingly, the agency did not err in finding that Lin failed to satisfy his burden of proving a well-founded fear of future persecution. *See* 8 C.F.R. § 1208.13(b)(2). Because the agency reasonably found that Lin failed to demonstrate the well-founded fear of persecution needed for asylum, he "necessarily" failed to meet the higher standards for withholding of removal and CAT relief. *Lecaj v. Holder*, 616 F.3d 111, 119–20 (2d Cir. 2010).

For the foregoing reasons, the petition for review is DENIED. All pending motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court