Hua v. Wilkinson

BIA
Hom, IJ
A208 154 299

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 18th day of February, two thousand twenty-one.

PRESENT:
ROSEMARY S. POOLER,
RICHARD J. SULLIVAN,
STEVEN J. MENASHI,
*Circuit Judges.*

_____

CHEN HUA,
*Petitioner,*

v.                                                     19-493
                                                       NAC

ROBERT M. WILKINSON, ACTING
UNITED STATES ATTORNEY GENERAL,
*Respondent.*[1]

_____

FOR PETITIONER:        Gary J. Yerman, New York, NY.

FOR RESPONDENT:        [VACANT], Assistant Attorney
                       General; Anthony P. Nicastro,
                       Assistant Director, Patricia E.
                       Bruckner, Trial Attorney, Office

[1] Pursuant to Fed. R. App. P. 43(c)(2), Robert M. Wilkinson is automatically substituted as Acting Attorney General.

of Immigration Litigation, United
States Department of Justice,
Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Chen Hua, a native and citizen of the People's Republic of China, seeks review of a February 8, 2019 decision of the BIA affirming a November 20, 2017 decision of an Immigration Judge ("IJ") denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Chen Hua,* No. A208 154 299 (B.I.A. Feb. 8, 2019), *aff'g* No. A208 154 299 (Immig. Ct. N.Y. City Nov. 20, 2017). We assume the parties' familiarity with the underlying facts and procedural history.

Under the circumstances of this case, we have reviewed the IJ's decision as modified by the BIA. *See Xue Hong Yang v. U.S. Dep't of Justice*, 426 F.3d 520, 522 (2d Cir. 2005). . "We review the agency's factual findings, including adverse credibility findings, under the substantial evidence standard, which requires that they be supported by reasonable, substantial and probative evidence in the record

2

when considered as a whole." *Hong Fei Gao v. Sessions*, 891 F.3d 67, 76 (2d Cir. 2018) (internal quotation marks omitted); *see* 8 U.S.C. § 1252(b)(4). Hua alleged past persecution on account of his attendance at an unregistered church in China and a fear of future persecution on that basis and on account of his continued practice of Christianity in the United States.  We find no error in the agency's denial of relief.

Credibility

"Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on . . . the consistency between the applicant's . . . written and oral statements . . . , the internal consistency of each statement, the consistency of such statements with other evidence of record . . . , and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor."  8 U.S.C. § 1158(b)(1)(B)(iii).  Substantial evidence supports the adverse credibility determination given inconsistencies between Hua's testimony and his letter in support of his brother's asylum case and between his application and testimony.

3

First, the agency reasonably relied on the inconsistency between Hua's testimony and his letter regarding when he became aware that attending an unregistered church was prohibited. *See* 8 U.S.C. § 1158(b)(1)(B)(iii). Hua testified that when he first attended an unregistered church, he did not know that his participation could be met with resistance from the Chinese police. However, Hua wrote in his 2015 letter in support of his brother's asylum claim that in December 2013, the Chinese police called and told him and his grandmother that his brother had been arrested for being involved in an unregistered church. The IJ was not required to credit Hua's explanation that he was unaware of the details of his brother's arrest given that Hua's letter also stated that prior to his brother's arrest, his brother occasionally told him about the family church, the police told him and his grandmother that his brother had joined an unregistered church, he accompanied his grandmother to pick up his brother upon his brother's release, and he accompanied his brother to the police station to report after his brother's release. *See Majidi v. Gonzales*, 430 F.3d 77, 80 (2d Cir. 2005) ("A petitioner must do more than offer a plausible explanation for his inconsistent statements to secure relief; he must

4

demonstrate that a reasonable fact-finder would be *compelled* to credit his testimony." (internal quotation marks omitted)).

Second, the agency reasonably determined that Hua was inconsistent as to whether he lived with his maternal grandmother and whether she knew about his arrest and detention. Hua's application and initial testimony provided that he was an only child raised by his paternal grandparents. He made no mention of a brother or that he had written a letter in support of that brother's asylum application. However, in his letter, he stated that he and his brother "relied on [their] maternal grandparents to live." Certified Administrative Record at 182. When confronted with this inconsistency, he stated that he had stayed with his maternal grandmother for a month after he was released from detention in 2015. Hua also stated that his maternal grandmother did not know about his alleged persecution. However, when asked how his grandmother could be unaware of his persecution while taking care of his injuries, he explained, "I only told her that I was beaten by someone. I didn't tell her the detailed situation. So I was, I did not want her to worry." *Id.* at 147. The IJ was not compelled to credit his explanation,

5

because the letter implied that both he and his brother lived with his maternal grandparents and it omitted any reference to his paternal grandparents or the fact that he and his brother did not live together. *See Majidi*, 430 F.3d at 80; *Siewe v. Gonzales*, 480 F.3d 160, 166–68 (2d Cir. 2007) (deferring to the IJ where there are two permissible views of the evidence).

Third, the agency reasonably relied on an inconsistency between Hua's testimony and his letter as to who introduced him to Christianity. *See* 8 U.S.C. § 1158(b)(1)(B)(iii); *Xiu Xia Lin v. Mukasey*, 534 F.3d 162, 165–67 (2d Cir. 2008). Hua testified that he was first introduced to Christianity and unregistered churches in 2014 when a friend preached the gospel to him. However, in his letter, he stated that his brother told him about unregistered churches and preached to him in 2013. The IJ was not required to accept Hua's explanation that he had not paid attention when his brother discussed Christianity, and that he thought he had to testify as to when he "officially" learned about Christianity and the church. *See Majidi*, 430 F.3d at 80.

The agency also reasonably faulted Hua for omitting from his application that he had almost been arrested in one

incident prior to his January 2015 arrest. Although "omissions are less probative of credibility than inconsistencies created by direct contradictions in evidence and testimony," the agency reasonably relied on this omission because Hua's application explained how church provided him a sense of comfort and yet failed to mention an initial raid that occurred very shortly after he began attending church. *Hong Fei Gao*, 891 F.3d at 78 (internal quotation marks omitted). Accordingly, this initial incident is a "fact[] . . . that a credible petitioner would reasonably have been expected to disclose under the relevant circumstances." *Id.* at 78–79.

Given these inconsistences, the agency's adverse credibility determination is supported by substantial evidence. *See* 8 U.S.C. § 1158(b)(1)(B)(iii); *Xiu Xia Lin*, 534 F.3d at 165–67.

Future Persecution

Absent past persecution, an applicant may prevail on an asylum claim by demonstrating that "he subjectively fears persecution and . . . that his fear is objectively reasonable." *Ramsameachire v. Ashcroft*, 357 F.3d 169, 178 (2d Cir. 2004). An applicant may make this showing by

7

establishing either a "reasonable possibility he or she would be singled out individually for persecution," or a "pattern or practice" of persecution of "persons similarly situated." 8 C.F.R. § 1208.13(b)(2)(iii); *see also Y.C. v. Holder*, 741 F.3d 324, 332 (2d Cir. 2013). Because the agency found that Hua was not credible as to past events, his claim of future persecution was based solely on his practice of Christianity in the United States. Where a claim is based on activities undertaken after the applicant's arrival in the United States, this requires "some showing that authorities in his country of nationality are (1) aware of his activities or (2) likely to become aware of his activities." *Hongsheng Leng v. Mukasey*, 528 F.3d 135, 138 (2d Cir. 2008).

Although the agency credited Hua's claim that he practices Christianity in the United States, it reasonably concluded that he did not have an objectively reasonable fear of future persecution on that basis. Hua did not allege that authorities were aware of his church attendance in the United States, nor did the country conditions establish a pattern or practice of persecution such that he could show his practice would likely be discovered. *See Jian Xing Huang v. U.S. INS*, 421 F.3d 125, 129 (2d Cir. 2005) ("In the absence of solid

8

support in the record . . . [a] fear is speculative at best."). The IJ took administrative notice of a 2016 State Department Report that mainly reported incidents involving pastoral officials and church leaders. Hua testified that he never held any religious office, and he provided no evidence to establish that Chinese authorities would give the same attention to his activities as a member of a church. Moreover, the report reflected significant regional variation in the treatment of unsanctioned religious groups in China, and thus did not establish a pattern or practice of persecution of unregistered church members in Hua's native Fujian Province. *See Jian Hui Shao v. Mukasey*, 546 F.3d 138, 149, 169–70 (2d Cir. 2008) (finding no error in the agency's requirement that an applicant demonstrate a well-founded fear of persecution specific to applicant's region when country conditions reflects regional variation in enforcement of policies).

In sum, Hua did not meet his burden for asylum because he did not present credible evidence that he suffered past harm or objective evidence that he was at risk of being singled out for future harm or that there is a pattern or practice of persecution of similarly situated Christians.

9

*See* 8 U.S.C. § 1158(b)(1)(B)(iii); 8 C.F.R. § 1208.13(b)(1)–(2). Because Hua failed to meet his burden for asylum, he "necessarily" failed to meet the higher standards for withholding of removal and CAT relief. *See Lecaj v. Holder*, 616 F.3d 111, 119–20 (2d Cir. 2010).

For the foregoing reasons, the petition for review is DENIED. Hua's pending motion for a stay of removal is DENIED as moot.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court