07-3630-ag
Shi Jie Ge v. Holder

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2008

Argued: May 27, 2009                                      Decided: December 2, 2009

Docket No. 07-3630-ag

_____

_____

SHI JIE GE,

                          Petitioner,

              -v-

ERIC H. HOLDER JR., ATTORNEY GENERAL,[1]
                          Respondent.

_____

LEVAL, POOLER, and B.D. PARKER, Circuit Judges.

       The petitioner seeks review of the July 25, 2007 decision of the Board of Immigration

Appeals, which affirmed an Immigration Judge's November 10, 2005 order denying his

applications for asylum, for withholding of removal, and for relief under the United Nations

Convention Against Torture and Other Inhumane or Degrading Treatment or Punishment.

Because we find that the BIA committed errors both as to the timeliness of the petitioner's

_____

       [1] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), current Attorney General
Eric H. Holder Jr. is automatically substituted for former Attorney General Michael B. Mukasey
as the respondent in this case.

application for asylum and in considering whether the petitioner would likely face persecution should he be returned to his native country, we GRANT the petition, VACATE the agency's decision denying relief, and REMAND to the agency for further proceedings.

———————

DAVID K. S. KIM (Matthew L. Guadagno, Kerry W. Bretz, and Jules E. Coven, on the brief), BRETZ & COVEN, LLP, New York, NY, for Petitioner.

ANNETE M. WIETECHA, Trial Attorney, Office of Immigration Litigation (Anh-Thu P. Mai, Senior Litigation Counsel, and Jeffrey S. Bucholtz, Acting Asst. Attorney General, on the brief), U.S. Department of Justice, Washington, D.C., for Respondent.

POOLER, Circuit Judge:

Shi Jie Ge has timely petitioned this Court, pursuant to Section 242 of the Immigration and Nationality Act ("INA"), as amended 8 U.S.C. § 1252, for review of the July 25, 2007 decision of the Board of Immigration Appeals ("BIA"), which affirmed an Immigration Judge's ("the IJ") November 10, 2005 order denying Ge's applications for asylum, for withholding of removal, and for relief under the United Nations Convention Against Torture and Other Inhumane or Degrading Treatment or Punishment ("CAT"). 1465 U.N.T.S. 85. We conclude that errors committed by the BIA require remand of Ge's applications for further proceedings consistent with this opinion.

**FACTS**

According to his Form I-589 Application for Asylum and Withholding of Removal,

which was filed on March 10, 2004, Shi Jie Ge was born in Tianjin, China, on September 11, 1961. Ge, who remains a Chinese citizen, entered the United States on a six-month visa on May 1, 2000, and has never returned to China. His wife, whom he married in 1989, and his son, who was born in 1990, remain in China.

Ge eventually came to reside in Queens, New York and, on July 28, 2004, he was served there with a Notice to Appear, which charged him with being a removable alien under Section 237(a)(1)(B) of the INA, in that he had remained in the United States beyond the expiration of his visa. 8 U.S.C. § 237(a)(1)(B). In a September 3, 2004 hearing before the IJ, Ge admitted to the truth of this allegation.

In his asylum application, Ge avers that he left China because of official retaliation against him after he complained of corrupt management practices at the electronics firm for which he worked as a salesman. But Ge's claim for asylum does not arise from these events. Rather, Ge's claim arises from his membership in the China Democracy Party ("CDP"), which, as attested to by the party's chairman, Ge joined, on June 15, 2001, after he entered the United States. On this appeal, Ge declares that he joined the CDP "because he was angry with the corrupt Chinese government and shared the principles the party stands for – freedom, human rights and justice." The record contains photographs of Ge participating in CDP demonstrations at the Chinese consulate in New York City, as well as articles written by Ge which were posted on the organization's website. We do not perceive that the Government questions the genuineness of Ge's involvement with the CDP.

Ge asserts that his work on behalf of the CDP includes the clandestine recruitment, by means of telephone, of party members within China itself. In fact, Ge contends that his

3

membership in the CDP was revealed to government authorities in China after an individual he recruited was arrested. After this individual reported Ge's membership, Ge asserts that, on October 20, 2003, his wife was visited by Chinese police officials, who urged her to encourage Ge to return to China. In a letter to the IJ, dated July 28, 2004, Ge's wife acknowledges that she first learned of Ge's CDP membership because of the arrest of "my husband's friend," although the letter did not mention any visit by government officials following the recruit's arrest. In his asylum application, Ge posits his fear of persecution should he be returned to China:

> As I exposed my [CDP] membership public [sic], my parents and my wife have been frequently harassed and persecuted by Chin[ese] Communist Party authority. My wife and my child dared not stay in our own home and they kept moving from place to place so as to avoid the harassment from Chinese police. Naturally I will face Chin[ese] Communist Party authority persecution if I return to China now, so I apply to the United States government for asylum.

The CDP's chairman, in testimony before the IJ on Ge's behalf, claims that CDP "members whose member[ships] were revealed in China were all arrested. Right now there are approximately 50 [CDP] members still in jail in China."

In her oral decision delivered on November 10, 2005, the IJ denied all of Ge's applications for relief. First, the IJ found that Ge's application for asylum was untimely filed under the applicable deadline of one year from entry into the United States because Ge did not file his application until almost four years after his arrival in this country. Further, the IJ rejected Ge's argument that he was subject to an exception to the one-year deadline based upon his claim that his CDP membership only became known to Chinese authorities in 2003. The IJ found that, beyond Ge's own testimony, "the Court has no evidence to establish that his membership in the

4

CDP has ever been discovered by the government of China."

The IJ also held that, even if Ge's application for asylum had been timely filed, his claim for asylum based upon the possibility of persecution should he be returned to China would fail. Specifically, the IJ held that although "[t]he background material [submitted by Ge] does indicate that dissidents from China are arrested and jailed" upon their return, "the Court finds that the respondent has not offered sufficient evidence to establish that the respondent's activities have become known to the government of China." After denying Ge's application for asylum, the IJ proceeded to deny his applications for withholding of removal, and for relief under CAT.

Ge filed a timely appeal to the BIA. In a July 25, 2007 decision, the BIA denied the appeal. In re Shi Jie Ge, No. 898-273-363 (B.I.A. July 25, 2007). The BIA first considered the timeliness of Ge's asylum application:

> With regard to the timeliness of the respondent's application for asylum, we see no reason to disturb the [IJ's] finding that it was not filed within [one] year of the respondent's arrival and did not fall within any exceptions to the filing deadline. Specifically, the respondent entered the United States in May 2000, but did not file his asylum application until March 2004, more than [three] years after he arrived. The respondent contends that his circumstances changed when he joined the CDP. Even if this membership did constitute changed circumstances, the respondent still waited nearly [three] years after he joined the CDP before filing his asylum application, which does not constitute filing an application within a reasonable time after a change of circumstances.

The BIA also upheld the denial of relief arising from Ge's claim that he faced persecution should he be returned to China on the merits. Specifically, the BIA rejected Ge's reliance upon our decision in Tun v. INS, 445 F.3d 554 (2d Cir. 2006):

> In Tun, there was evidence that the Burmese government conducts

5

extensive intelligence-gathering and surveillance on groups of Burmese expatriates who are politically active against the Burmese government in the United States. Id. at 569-70. In contrast, while the 2006 United States Department of [State] Country Report on China (of which we take judicial notice) provides that CDP activists sometimes are targeted for arrest or arbitrary detention, there is no indication that China tracks expatriate political activists (Report at 4-5, 7). Thus, we do not find that Tun . . . supports the respondent's claim. We do not find that it is more likely than not that the respondent's life or freedom will be threatened on account of his political activities in the United States.

The instant appeal followed.

## ANALYSIS

The parties disagree as to the scope of review we should employ in considering whether the agency properly denied Ge's claims for relief. Citing Yan Chen v. Gonzales, 417 F.3d 268, 271 (2d Cir. 2005), Ge posits that this is a case where the BIA both adopted and supplemented the IJ's decision and that, accordingly, we should consider the IJ's decision, as supplemented by the BIA. We agree with the Government, however, that the BIA conducted its own analysis of Ge's claims and that the BIA did not expressly adopt the IJ's decision. Accordingly, we will review the decision of the BIA alone. See Mu Xiang Lin v. U.S. Dep't of Justice, 432 F.3d 156, 159 (2d Cir. 2005).

There can be no disagreement that we review the agency's legal conclusions de novo, see Yi Long Yang v. Gonzales, 478 F.3d 133, 141 (2d Cir. 2007), and its factual findings, including adverse credibility determinations, under the substantial evidence standard. 8 U.S.C. § 1252(b)(4)(B); see also Shu Wen Sun v. BIA, 510 F.3d 377, 379 (2d Cir. 2007).

In order to be considered a refugee and therefore eligible for asylum, the INA provides

6

that Ge must show that he has suffered past persecution on account of "race, religion, nationality, membership in a particular social group, or political opinion," or that he has a "well-founded fear of persecution" on such grounds should he be ordered to return to his native country. 8 U.S.C. § 1101(a)(42). A well-founded fear is "a subjective fear that is objectively reasonable. A fear is objectively reasonable even if there is only a slight, though discernible, chance of persecution." Tambadou v. Gonzales, 446 F.3d 298, 302 (2d Cir. 2006) (citations and internal quotation marks omitted).

## A. The Timeliness of Ge's Application for Asylum.

The INA provides that "[a]ny alien who is physically present in the United States or who arrives in the United States . . . may apply for asylum" so long as "the alien demonstrates by clear and convincing evidence that the [asylum] application has been filed within 1 year after the date of the alien's arrival in the United States." 8 U.S.C. §§ 1158(a)(1), 1158(a)(2)(B). There is no question that Ge's application, which is dated February 15, 2004, is untimely under this statute because the application itself indicates that Ge entered the United States on May 1, 2000. Ge argues, however, that his application was timely filed in light of events relating to his CDP membership, which began after he arrived in the United States. Accordingly, Ge relies upon 8 U.S.C. section 11518(a)(2)(D), which provides for an exception to the one-year timeliness deadline because of "changed circumstances which materially affect the applicant's eligibility for asylum . . . ." Pursuant to 8 C.F.R. section 208.4(a)(4)(i)(B), "changed circumstances" include "activities the applicant becomes involved in outside the country of feared persecution that place the applicant at risk."

As already noted, the BIA found that Ge could not avail himself of the exception because

7

"[e]ven if [his CDP] membership did constitute changed circumstances, [Ge] still waited nearly three years after he joined the CDP before filing his asylum application, which does not constitute filing an application within a reasonable time after a change of circumstances." Further, as the Government correctly reminds us, the INA mandates that, for the most part, no court shall have jurisdiction to review the agency's finding that an asylum application was untimely. See 8 U.S.C. § 1158(a)(3).

We do, however, retain jurisdiction to review constitutional claims and questions of law. See 8 U.S.C. § 1252(a)(2)(D). And, although the Government contends that Ge is merely quibbling about factual findings, we find that he has raised a valid question of law concerning the BIA's application of the "changed circumstances exception" to the one-year filing deadline.

Again, the BIA looked to the date of Ge's joining the CDP as the only "changed circumstance" which might allow him to avail himself of the exception. We agree with Ge that this constitutes legal error because it is a misapplication of the plain terms of the regulation. See Perriello v. Napolitano, __ F.3d __, 2009 WL 2749779 at *2 (2d Cir. Sept. 1, 2009) (stating that although federal court owes deference to BIA's interpretation of its own regulations, interpretation that is plainly erroneous is not controlling).

Specifically, Ge contends that while he joined the CDP in 2001, at the direction of the party leadership he "did not engage in any political activities publicly until approximately March of 2003." Further, Ge states that "he discovered for the first time that his activities with CDP were revealed to the Chinese government in October 2003 when he learned through his family that a fellow CDP member he recruited was arrested by the Chinese authorities." Ge argues that 8 C.F.R. section 208.4(a)(4)(i)(B) "clearly provides that 'activities the applicant becomes

8

involved in outside the country of feared persecution that place the applicant at risk,' not mere membership in a political party, provide[] an exception to the one-year deadline." Thus, Ge argues that, by focusing exclusively on the date of his enrollment as a member of the CDP, the BIA ignored the plain terms of the regulation, which define "changed circumstances" far more broadly.

We agree. Ge has demonstrated that the BIA committed legal error by effectively holding that the only activity cognizable under the regulation was the act of his enrollment in the CDP, an act which Ge contends was committed clandestinely. By taking no notice of Ge's later activities as a member of the CDP, acts which Ge contends amounted to a public declaration of his membership in an organization banned by the Chinese government, the BIA ignored the plain terms of the regulation and improperly made party membership alone the trigger date for Ge's invocation of the changed circumstances exception. The regulation entitles Ge to consideration of his contention that it was events taking place <u>after</u> he became a CDP member which have placed him at risk of persecution should he be returned to China.

**B. Fear of Future Prosecution.**

We also find that Ge has raised a valid question of law concerning whether the BIA properly applied this Court's holding in <u>Tun v. INS</u>, 445 F.3d 554 (2d Cir. 2006), in determining that Ge had not proffered sufficient evidence that he would face persecution should he be returned to China. Before the BIA, Ge contended that he was eligible for relief because of evidence he presented regarding the persecution of CDP members who are returned to China. The BIA did not disregard this evidence. On the contrary, as already noted, it made reference to "the 2006 United States Department of [State] Country Report on China . . . [which] provides

9

that CDP activists sometimes are targeted for arrest or arbitrary detention . . . ." The BIA, however, held that Ge's claim failed under Tun because in that case "there was evidence that the Burmese government conducts extensive intelligence-gathering and surveillance on groups of Burmese expatriates who are politically active against the Burmese government," while "there is no indication that China tracks expatriate political activists."

This reading of Tun makes a grant of relief contingent upon a showing that the country to which the petitioner is to be returned conducts such extensive monitoring activities beyond its borders that it can be assumed that the authorities have become aware that the petitioner himself has been involved with a banned organization while living abroad. But this is not the standard we have adopted. In a case coincidentally involving the asylum claim of a CDP member, this Court recently discussed its holding in Tun:

> To demonstrate that "[his] fear of [future] persecution is well-founded," [ ] an applicant must establish that his putative "persecutor is, or could become, aware of the applicant's possession of the disfavored belief or characteristic." [Tun, 445 F.3d at 565] As we have explained, an applicant can make this showing in one of two ways: first, by offering evidence that "he or she would be singled out individually for persecution"; and second, by "prov[ing] the existence of 'a pattern or practice in his or her country of nationality . . . of persecution of a group of persons similarly situated to the applicant' . . . and . . . establish[ing] 'his or her own inclusion in, and identification with, such [a] group.'" Id. at 564 (quoting 8 C.F.R. § 208.13(b)(2)(iii)).
>
> Put simply, to establish a well-founded fear of persecution in the absence of any evidence of past persecution, an alien must make some showing that authorities in his country of nationality are either aware of his activities or likely to become aware of his activities.

Hongsheng Leng v. Mukasey, 528 F.3d 135, 142-43 (2d Cir. 2008) (per curiam) (emphasis

added).

Thus, Tun does not require a petitioner to demonstrate that authorities in the country to which he is to be returned are possessed of an awareness of his involvement in a banned organization prior to his return. Rather, a petitioner may also demonstrate a well-founded fear of future persecution by demonstrating that his involvement in a banned organization may become known after his return. This is precisely what warranted a remand in Hongsheng Leng:

> The IJ, while concluding that Leng had not testified credibly as to his belief that the government of the [Peoples' Republic of China ("PRC")] was aware of his CDP membership and political activities, did not make any specific finding as to whether other evidence in the record supports this claim [of future persecution]. Accordingly, we remand this matter for the very limited purpose of allowing the IJ to consider whether authorities of the PRC were (1) aware or (2) likely to become aware of Leng's activities.

528 F.3d at 143. We find remand is proper here to reopen the record to permit Ge to present additional evidence as to the Chinese government's likely future awareness of his involvement with the CDP. On remand, the IJ should determine whether Ge has made a substantial showing of 1) a well founded fear of future persecution, because 2) the Chinese government is likely to become aware of his membership in the CDP after his return to China.

**C. Due Process Claim.**

Ge asserts that the agency violated due process because the IJ initially made an oral ruling granting withholding of removal, but at a later hearing reversed this decision without explanation. While the IJ's action is unexplained, we find that, even assuming arguendo that Ge's due process claim has some merit, any injury suffered as a result has been cured because Ge has been afforded the requisite full and fair opportunity to litigate the merits of his withholding

11

of removal claim before the BIA and this Court.  See Yu Sheng Zhang v. U.S. Dep't of Justice, 362 F.3d 155, 159 (2d Cir. 2004).

### D.  Denial of Relief Under CAT.

Finally, Ge contends that the BIA erred by "completely" failing to consider his claim for relief under CAT.  We see, however, no reason to disturb the BIA's finding that Ge failed to make any argument before it regarding CAT relief, and that the claim could therefore be considered as having been abandoned.  See Gui Yin Liu v. INS, 508 F.3d 716, 723 n.6 (2d Cir. 2007).


### CONCLUSION

We **GRANT** the petition for review, **VACATE** the decision of the BIA denying Ge's claims for asylum and withholding of removal, and **REMAND** the case for further proceedings consistent with this opinion. The denial of relief under CAT is **AFFIRMED**.