11-3220-ag
Zheng v. Holder
BIA
Hom, IJ
A089 253 162

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 19th day of September, two thousand thirteen.

PRESENT:
　　　　ROSEMARY S. POOLER,
　　　　PETER W. HALL,
　　　　DENNY CHIN,
　　　　　　*Circuit Judges.*
_____

MEI QIN ZHENG,
　　　　*Petitioner,*

　　　　v.　　　　　　　　　　　　　11-3220-ag
　　　　　　　　　　　　　　　　　　NAC
ERIC H. HOLDER, JR., UNITED STATES
ATTORNEY GENERAL,
　　　　*Respondent.*
_____

FOR PETITIONER:　　　　Gang Zhou, New York, New York.

FOR RESPONDENT:　　　　Tony West, Assistant Attorney
　　　　　　　　　　　　General; Douglas E. Ginsburg,
　　　　　　　　　　　　Assistant Director; Matthew B.
　　　　　　　　　　　　George, Trial Attorney, Office of
　　　　　　　　　　　　Immigration Litigation, United
　　　　　　　　　　　　States Department of Justice,
　　　　　　　　　　　　Washington, D.C.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the decision of the BIA denying Zheng's claims for asylum and withholding of removal is VACATED and the case is REMANDED for further proceedings.

Petitioner Mei Qin Zheng, a native and citizen of the People's Republic of China, seeks review of a July 11, 2011, order of the BIA affirming the June 9, 2009, decision of Immigration Judge ("IJ") Sandy Hom, which pretermitted Zheng's application for asylum and denied her application for withholding of removal and relief under the Convention Against Torture ("CAT"). *In re Mei Qin Zheng*, No. A089 253 162 (B.I.A. July 11, 2011), *aff'g* No. A089 253 162 (N.Y.C. Immig. Ct. June 9, 2009). We assume the parties' familiarity with the underlying facts and procedural history in this case.

Under the circumstances of this case, we have reviewed the decisions of both the IJ and the BIA. *See Ming Xia Chen v. BIA*, 435 F.3d 141, 144 (2d Cir. 2006). The applicable standards of review are well established. *See* 8 U.S.C. § 1252(b)(4)(B); *Yanqin Weng v. Holder*, 562 F.3d 510, 513 (2d Cir. 2009).

2

## I.   Pretermission of Asylum

In general, we do not have jurisdiction to review the agency's finding that an asylum application was untimely under § 1158(a)(2)(B) or that circumstances excusing the untimeliness under § 1158(a)(2)(D) did not exist.  *See* 8 U.S.C. § 1158(a)(3).  Nonetheless, this Court retains jurisdiction to review constitutional claims and questions of law.  *Id.* § 1252(a)(2)(D).

In pretermitting Zheng's asylum application, the BIA concluded that she did not act within a reasonable time of changed circumstances materially affecting her claim because she filed her application on August 11, 2008, almost eleven months after she became a Chinese Democracy Party ("CDP") member on September 25, 2007.  In reaching that determination, the BIA relied solely on the date Zheng joined the CDP.  "[C]hanged circumstances," however, include changes in "activities the applicant becomes involved in outside the country of feared persecution that place the applicant at risk."  8 C.F.R. § 208.4(a)(4)(i)(B).  Zheng contends that the BIA erred in failing to consider whether later activities -- specifically, the publication of her article in the CDP's "World Journal" on December 13, 2007,

3

or the online publication of her CDP member page and article on June 4, 2008 -- constituted changed circumstances.

Because the Chinese government could have become aware of Zheng's CDP membership for the first time in December 2007 or June 2008, we conclude that the BIA committed legal error by not considering these later events in determining whether her asylum application was filed "within a reasonable period" afterward. 8 C.F.R. § 208.4(a)(4); *see Shi Jie Ge v. Holder*, 588 F.3d 90, 94-95 (2d Cir. 2009) (The BIA's use of the "date of [the applicant's] *joining* the CDP as the only 'changed circumstance' which might allow him to avail himself of the exception . . . constitutes legal error because it is a misapplication of the plain terms of the regulation."). The agency erred by failing to consider Zheng's evidence of events taking place after she became a CDP member that could have triggered a change in circumstances subjecting her to persecution if she were to return to China.

**II. Well-Founded Fear of Future Persecution**

We also find that the BIA erred with respect to its conclusion that even if Zheng's application were timely, she did not establish that she has a well-founded fear of

4

persecution in China based on her political activities in the United States.

First, the agency based its determination on Zheng's purported failure to establish "that her organization is connected to the 'China Democracy Party' that is discussed in the State Department Reports and described as banned in China." *In re Mei Qin Zheng*, No. A089 253 162, at 2 (B.I.A.). The record shows that Zheng belonged to a group called the "China Democracy Party Foundation" ("CDP-NY") that is based in New York and was founded by Xie Wanjun, an original founder of the "China Democracy Party" banned in China. Although the record is unclear as to whether the two organizations are the same, Zheng presented evidence that her organization sprang from the banned group and that Wanjun attempted to recruit new members in China, and hence that the Chinese government would be aware of CDP-NY's activities and members. The BIA rejected the evidence in a conclusory fashion, *In re Mei Qin Zheng*, No. A089 253 162, at 2 (B.I.A.), and apparently it did not consider the possibility that even if the two organizations were not the same, Zheng might have a valid political activity asylum claim without being a member of a "banned organization." Indeed, the State Department Asylum

5

Report in the record describes persecution in China for political activity and expression of opinion that does not involve membership in a banned organization. Zheng seeks asylum not based on membership in a banned organization, but for all her political activities in the United States.

Second, in its burden of proof and persuasion analysis, the BIA seemingly required direct evidence of past persecution to prove future persecution, when the law provides that an asylum applicant may "establish a well-founded fear of persecution in the absence of any evidence of past persecution" by "showing that authorities in his country of nationality are either aware of his activities or likely to become aware of his activities." *Hongsheng Leng v. Mukasey*, 528 F.3d 135, 142-43. Indeed, the BIA suggested that Zheng was required to present evidence that someone in her particular group in New York had returned to China and been persecuted. *In re Mei Qin Zheng*, No. A089 253 162, at 2 (B.I.A.) ("Having considered the respondent's documentary submissions, the respondent has not presented evidence that anyone involved in the 'China Democracy Party USA headquarters' in Flushing, New York, has returned to China and faced problems based on such activity in the United States."). There are other ways, however, for

6

an applicant to establish a well-founded fear of persecution. An asylum applicant who was involved with a new organization, for example, could prove through circumstantial evidence that given the nature of her activities, there is a reasonable likelihood she would be subjected to persecution if she returned to China. *See Yueqing Zhang v. Gonzales*, 426 F.3d 540, 545 (2d Cir. 2005) (noting asylum applicants may use circumstantial evidence to prove motive of persecutor arises from applicant's political beliefs).

Finally, the BIA found that Zheng did not show that her CDP article had attracted the attention of the Chinese government or that it was likely published in China. *In re Mei Qin Zheng*, No. A089 253 162, at 2 (B.I.A.). Zheng presented evidence, however, that she was listed on the "CDP Member's Site" personal web page and that a link to her article appeared on that website. The record also contains evidence, including the 2008 Annual Report of the Congressional-Executive Commission on China, that the Chinese government monitored the Internet for postings expressing disagreement with the government's views. *See, e.g.*, Cong.-Exec. Comm'n on China, Annual Report (2008) ("The Chinese government and Communist Party continue to

7

control the Internet through an effective and pervasive system that relies on government regulation [and is] motivated by political concerns."); *see also* U.S. Dep't of State, China: Profile of Asylum Claims and Country Conditions (May 2007) ("The Chinese Government sometimes monitors the political activities of students or exchange scholars living abroad.  Those who have joined organizations deemed hostile to China have been advised in the official media that they should quit them before returning and while abroad refrain from activities that violate Chinese law."). Hence, the record contains some indication that Zheng's article was circulated in China or posted in such a manner that the Chinese authorities could access it.  It is not apparent from the record that the agency considered this evidence.

### CONCLUSION

For the foregoing reasons, we VACATE the decision of the BIA denying Zheng's claims for asylum and withholding of removal and REMAND the case for further proceedings.  The agency is directed to consider whether: (1) Zheng's political activities, in addition to her initial membership in the CDP, triggered a change in circumstances affecting the timeliness of her asylum application; (2) the CDP

8

headquartered in New York is related to the CDP banned in China; (3) Zheng's activity in the United States was a basis for a reasonable fear of future persecution, even assuming she was not a member of a banned organization or an organization whose members had been persecuted in the past; and (4) the Chinese government could have had access to Zheng's article given its publication via the Internet and the record evidence of the Chinese government's monitoring of the Internet.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk