21-6621-ag
Chen v. Garland

BIA
Poczter, IJ
A200 283 349

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 12ᵗʰ day of February, two thousand twenty-four.

**PRESENT:**

> **JON O. NEWMAN,**
> **JOSEPH F. BIANCO,**
> **EUNICE C. LEE,**
> > *Circuit Judges.*

_____

**DE SU CHEN,**
> *Petitioner*,

> v.

**MERRICK B. GARLAND, UNITED STATES ATTORNEY GENERAL,**
> *Respondent.*

_____

21-6621-ag

NAC

| | |
|---|---|
| **FOR PETITIONER:** | Gang Zhou, Esq., Jersey City, NJ. |
| **FOR RESPONDENT:** | Brian Boynton, Principal Deputy Assistant Attorney General; Holly M. Smith, Assistant Director; Christin M. Whitacre, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC. |

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner De Su Chen, a native and citizen of the People's Republic of China, seeks review of a November 17, 2021 decision of the BIA affirming a June 25, 2018 decision of an Immigration Judge ("IJ") denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re De Su Chen,* No. A 200 283 349 (B.I.A. Nov. 17, 2021), *aff'g* No. A 200 283 349 (Immigr. Ct. N.Y.C. June 25, 2018). We assume the parties' familiarity with the underlying facts and procedural history.

We have reviewed the IJ's decision as supplemented by the BIA. *See Yan Chen v. Gonzales*, 417 F.3d 268, 271 (2d Cir. 2005). We review the agency's "legal conclusions *de novo*, and its factual findings, including adverse credibility determinations, under the substantial evidence standard." *Y.C. v. Holder*, 741 F.3d 324, 332 (2d Cir. 2013) (quoting *Shie Jie Ge v. Holder*, 588 F.3d 90, 93-94 (2d Cir. 2009). "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). To obtain asylum, Chen had to establish either past persecution or a "well-founded fear" of future persecution. 8 U.S.C. § 1101(a)(42); *see also id.* § 1158(b)(1)(A), (B)(i); 8 C.F.R. § 1208.13(b).

**I.     Past Persecution**

Substantial evidence supports the agency's partial adverse credibility determination as to Chen's allegations of past persecution. "Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on the demeanor, candor, or responsiveness of the applicant or witness, . . . the consistency between the applicant's or witness's written and oral statements . . . , the internal consistency of each such statement, the consistency of such statements with other evidence of record . . . , and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor." 8 U.S.C. § 1158(b)(1)(B)(iii). "We defer . . . to an IJ's credibility determination unless, from the totality of the circumstances, it is plain that no reasonable fact-finder could make such an adverse credibility ruling." *Xiu Xia Lin v. Mukasey*, 534 F.3d 162, 167 (2d Cir. 2008) (per curiam); *accord Hong Fei Gao v. Sessions*, 891 F.3d 67, 76 (2d Cir. 2018).

The agency relied, in part, on Chen's vague, unresponsive, and confused testimony. We generally defer to such findings because "[a] fact-finder who assesses testimony together with witness demeanor is in the best position to discern . . . whether a witness who hesitated in a response was . . . attempting truthfully to recount what he recalled of key events." *Majidi v. Gonzales*, 430 F.3d 77, 81 n.1 (2d Cir. 2005); *see Jin Chen v. U.S. Dep't of Just.*, 426 F.3d 104, 113 (2d Cir. 2005) (giving "particular deference to credibility determinations that are based on the adjudicator's observation of the applicant's

demeanor"). "We can be still more confident in our review of observations about an applicant's demeanor where, as here, they are supported by specific examples of inconsistent testimony." *Li Hua Lin v. Dep't of Just.*, 453 F.3d 99, 109 (2d Cir. 2006).

The agency reasonably relied on Chen's nonresponsive and internally inconsistent answers to questions about whether the police came to his home to arrest him before he left China. On direct examination, Chen stated both that the police had and had not come to his home looking for him before he left the country, gave a departure date from China that was before the date of a police visit that he claimed occurred while he was still in China, and repeatedly asserted that he did not understand simple questions from his own attorney. As the agency found, Chen's testimony on cross-examination about his decision to depart China in 2011 after a failed attempt to do so in 2009 was similarly confused. Chen's testimony was nonresponsive at other points as well.

The agency also reasonably relied on an inconsistency between Chen's testimony and his mother's letter. Chen's mother wrote that when the police came to their home looking for Chen, they told her that he was suspected of participating in illegal religious activities and that he had been involved in an altercation that resulted in head injuries to a police officer; and when she denied that Chen would harm a police officer, the officers responded that his accomplices had confessed. When asked about the letter on cross-examination, Chen contradicted it, denying that the police told his mother about the injured officer during that encounter, repeatedly claiming that she learned of this allegation later, and stating inconsistently that she heard about the injured officer from a person whose

4

home she had visited or from the police.

Here, Chen does not address these bases for the agency's decision. Instead, he principally argues that the agency should have revisited its credibility determination regarding his claims of past persecution when it determined that he had rehabilitated his testimony regarding his religious practice in the United States with reliable corroborating evidence. But the agency was not required to infer that Chen was credible on all issues merely because he was able to document one part of his account. *See Siewe v. Gonzales*, 480 F.3d 160, 170 (2d Cir. 2007) (explaining that "a single instance of false testimony may (if attributable to the petitioner) infect the balance of the [petitioner's] uncorroborated or unauthenticated evidence"). Further, Chen's claims of past persecution were not bolstered by the evidence corroborating his religious practice in the United States because the evidence supporting the latter was distinct and more reliable. For example, his testimony did not contradict the documentary evidence about his religious practice in the United States, a witness from his U.S. church was available for cross-examination, and the parties stipulated that the witness would testify consistently with her affidavit.

In sum, given Chen's nonresponsive testimony and the multiple inconsistencies, substantial evidence supports the agency's conclusion that Chen did not testify credibly about being threatened with arrest for practicing Christianity in China. *See Likai Gao v. Barr*, 968 F.3d 137, 145 n.8 (2d Cir. 2020) ("[E]ven a single inconsistency might preclude [a petitioner] from showing that an IJ was compelled to find him credible. Multiple inconsistencies would so preclude even more forcefully."); *Xiu Xia Lin*, 534 F.3d at 167.

5

## II.    Future Persecution

Because Chen did not establish past persecution, he had the burden to demonstrate a well-founded fear of future persecution.   8 C.F.R. § 1208.13(b)(2).   To make that showing, an applicant must "establish that his fear is objectively reasonable." *Ramsameachire v. Ashcroft*, 357 F.3d 169, 178 (2d Cir. 2004).   "Objective reasonableness entails a showing that a reasonable person in the petitioner's circumstances would fear persecution if returned to his native country."  *Jian Xing Huang v. U.S. INS*, 421 F.3d 125, 128 (2d Cir. 2005).   "An [applicant's] fear may be well-founded even if there is only a slight, though discernible, chance of persecution."  *Diallo v. INS*, 232 F.3d 279, 284 (2d Cir. 2000).   But a fear is not objectively reasonable if it lacks "solid support" in the record and is merely "speculative at best."  *Jian Xing Huang*, 421 F.3d at 129.   We review the factual findings underlying the agency's decision for substantial evidence, "reversing only if no reasonable fact-finder could have failed to find that petitioner . . . had a well-founded fear of future persecution or torture."  *Ramsameachire*, 357 F.3d at 177 (quotation marks omitted).

The agency credited Chen's testimony that he practices Christianity in the United States, and it either implicitly credited, or assumed arguendo, that he would continue practicing Christianity in China.   Chen does not argue that he showed a reasonable possibility that he would be singled out for persecution on that basis, so the issue is whether he established a well-founded fear by showing a "pattern or practice" of persecution of a

group of "persons similarly situated" to himself.[1]   8 C.F.R. § 1208.13(b)(2)(iii).

The agency reasonably concluded that the evidence did not establish "systemic or pervasive" persecution of Christians in Chen's native Fujian province.   *In re A-M-*, 23 I. & N. Dec. 737, 741 (B.I.A. 2005) (defining a "pattern or practice").   The agency properly focused its inquiry on Chen's home province because the record established that the extent of religious persecution varied by region, *see* Certified Administrative Record at 1210 (State Dep't 2012 Int'l Religious Freedom Rep.) ("In parts of the country, local authorities tacitly approved of or did not interfere with the activities of unregistered groups."); *Jian Liang v. Garland*, 10 F.4th 106, 117 (2d Cir. 2021) (concluding that pattern or practice claim fails when persecution of religious practitioners is not nationwide and there is no evidence of persecution in applicant's home province).

As the agency acknowledged, the record established some instances of abuses of Christians in Fujian province, including the demolition of at least one church in 2006.   An affidavit from a person in Fujian province, whose relationship to the petitioner was not specified, asserted that local police began raiding and closing churches in three villages in the spring of 2012 and, during a December 2013 raid, arrested two church members and assaulted others.   A supplemental affidavit from Chen's mother asserted that, in 2015, she and 40 other local Christians were forced to attend a speech about a new policy restricting unregistered churches, after which she was afraid to continue attending house church

---

[1] Chen asserts that the agency cited a nonexistent regulation for the proposition that he had to show a pattern or practice of people "similarly situated."   However, the BIA stated the correct legal standard, but misidentified the sub-section of the regulation.

services and felt pressured to attend a state-sponsored church that did not reflect her beliefs. A 2015 article published by the organization China Aid asserted that authorities in Fujian arrested a man and his mother and demolished their house because they were Christians. And a 2016 article from the same organization reported that authorities in Fujian demolished another unregistered Christian church.

The agency reasonably concluded that these incidents, which occurred over a span of more than a decade, in an area with a population of over 41 million people, reflected isolated instances of abuse, rather than abuse that was systemic and pervasive. *See* https://www.britannica.com/place/Fujian. That is particularly the case because the agency reasonably determined that some of the above sources were entitled to diminished weight: China Aid is an advocacy organization, Chen's mother is an interested party unavailable for cross-examination, and there is no explanation of how the other affiant (who was also unavailable for cross-examination) came to write in support of Chen's application. *See Likai Gao*, 968 F.3d at 149 (upholding an IJ's decision to afford limited weight to letter from spouse and friend in China); *Y.C.*, 741 F.3d at 334 ("We defer to the agency's determination of the weight afforded to [a petitioner's] documentary evidence."). Moreover, the U.S. State Department's 2017 International Religious Freedom Report noted the detention of a Catholic bishop in Fujian, but not any instances of abuses of Protestants like Chen in that province.[2] *See Xiao Ji Chen v. U.S. Dep't of Just.*, 471 F.3d 315, 341

---

[2] The IJ properly took administrative notice of this document. *See* 8 C.F.R. § 1003.1(d)(3)(iv); *see also Jian Hui Shao v. Mukasey*, 546 F.3d 138, 166 (2d Cir. 2008). It is available at https://www.state.gov/wp-content/uploads/2019/01/China-Includes-Tibet-Hong-Kong-and-Macau.pdf.

(2d Cir. 2006) (reiterating that "a report from the State Department is usually the best available source of information on country conditions" (quotation marks omitted)).

Contrary to Chen's argument, the BIA did not err in failing to address the new evidence he submitted on appeal. The BIA is limited to reviewing the record before the IJ and may not consider new evidence on appeal absent a motion to reopen. *See* 8 C.F.R. § 1003.1(d)(7)(v)(A) ("A party seeking to submit new evidence shall file a motion to reopen in accordance with applicable law."); *see also id.* § 1003.1(d)(3)(iv)(C) (authorizing *sua sponte* remand for further factfinding only where necessary to determine the IJ's jurisdiction). Chen did not file such a motion. Although his brief here cites standards applicable to a motion to reopen, Chen does not acknowledge that he failed to file such a motion or argue that the agency should have construed his submission of new evidence— which was filed through counsel—as a motion.

Finally, Chen's argument that the agency otherwise overlooked material evidence is meritless. The IJ "need not expressly parse . . . each individual . . . piece of evidence," *Manning v. Barr*, 954 F.3d 477, 486 (2d Cir. 2020) (quotation marks omitted), and "we presume that an IJ has taken into account all of the evidence before h[er], unless the record compellingly suggests otherwise," *Xiao Ji Chen*, 471 F.3d at 336 n.17. Here, although the IJ did not expressly discuss some evidence (including the affidavits discussed above), there is no indication that the agency failed to consider all the evidence that was properly presented to the IJ, particularly as the BIA noted that the IJ was not required to give weight to the affidavits, and the IJ stated that she had considered the record evidence.

9

For the foregoing reasons, the petition for review is DENIED.   All pending motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court