22-6127
Singh v. Garland

BIA
Schoppert, IJ
A205 935 881

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

<u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

**At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 30th day of July, two thousand twenty-four.**

**PRESENT:**
> **PIERRE N. LEVAL,**
> **ROBERT D. SACK,**
> **EUNICE C. LEE,**
> > *Circuit Judges.*

_____

**AMARJEET SINGH,**
> *Petitioner,*

> **v.**

**MERRICK B. GARLAND, UNITED STATES ATTORNEY GENERAL,**
> *Respondent.*

**22-6127**
**NAC**

**FOR PETITIONER:**             Daniel I. Phillips, Gell & Gell, New York, NY.

**FOR RESPONDENT:**        Brian M. Boynton, Principal Deputy Assistant Attorney General; Melissa Neiman-Kelting, Assistant Director; Jennifer P. Williams, Trial Attorney, Office of Immigration Litigation, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Amarjeet Singh, a native and citizen of India, seeks review of a February 14, 2022 decision of the BIA affirming an August 30, 2018 decision of an Immigration Judge ("IJ") which denied his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Amarjeet Singh*, No. A 205 935 881 (B.I.A. Feb. 14, 2022), *aff'g* No. A 205 935 881 (Immigr. Ct. N.Y.C. Aug. 30, 2018). We assume the parties' familiarity with the underlying facts and procedural history.

We have reviewed the IJ's decision as modified by the BIA, i.e., without the grounds for the adverse credibility determination that the BIA declined to reach.[1]

---

[1] Accordingly, Singh's argument that his documentary evidence resolved an

*See Xue Hong Yang v. U.S. Dep't of Just.*, 426 F.3d 520, 522 (2d Cir. 2005). We review the agency's "legal conclusions *de novo*, and its factual findings, including adverse credibility determinations, under the substantial evidence standard." *Y.C. v. Holder*, 741 F.3d 324, 332 (2d Cir. 2013) (quoting *Shi Jie Ge v. Holder*, 588 F.3d 90, 93-94 (2d Cir. 2009). "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

The governing credibility standard provides as follows:

Considering the totality of the circumstances, and all relevant factors, a trier of fact may base a credibility determination on . . . the consistency between the applicant's . . . written and oral statements (whenever made and whether or not under oath, and considering the circumstances under which the statements were made), the internal consistency of each such statement, . . . and any inaccuracies or falsehoods in such statements, without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor.

8 U.S.C. § 1158(b)(1)(B)(iii). "We defer . . . to an IJ's credibility determination unless, from the totality of the circumstances, it is plain that no reasonable fact-finder could make such an adverse credibility ruling." *Xiu Xia Lin v. Mukasey*,

---

inconsistency related to the date he joined his political party—a finding the BIA declined to affirm—is misplaced.

3

534 F.3d 162, 167 (2d Cir. 2008); *accord Hong Fei Gao v. Sessions*, 891 F.3d 67, 76 (2d Cir. 2018). Substantial evidence supports the agency's adverse credibility determination, which was premised on inconsistencies between Singh's border interview and subsequent statements regarding an alleged kidnapping by members of an opposing political party in India.

The agency identified multiple inconsistencies between Singh's testimony and his border interview regarding where he was kidnapped from, the number of kidnappers involved, whether there were witnesses, how long he was held, whether he was released or escaped, where he received medical treatment, and the nature of his injuries. Contrary to Singh's argument, these inconsistencies are not trivial: they related directly to an event central to his claim of past persecution. And his explanations here are not compelling. "A petitioner must do more than offer a plausible explanation for his inconsistent statements to secure relief; he must demonstrate that a reasonable fact-finder would be *compelled* to credit his testimony." *Majidi v. Gonzales*, 430 F.3d 77, 80 (2d Cir. 2005) (internal quotation marks omitted). Singh asserts that the friends who were allegedly kidnapped with him were not "witnesses" because he never learned what happened to them; but he did not offer that explanation to the agency, and his statement to a border

4

agent denying that there were witnesses did not suggest that he was drawing this distinction.   And even if his captors were alternately friendly and brutal toward him, it could not be simultaneously true that he escaped by running away when the opportunity arose, and that his captors released him.

Singh also argues that the agency erred by relying on these inconsistencies without giving him an opportunity to explain or without considering his explanations.   To the contrary, Singh was asked about the inconsistencies regarding the number of kidnappers, whether his friends were kidnapped with him, the duration of his detention, and his injuries.   And in any event, these inconsistencies were sufficiently dramatic, such that the IJ could have relied on them without inviting Singh to explain.   *Id.* at 81 (holding that an "IJ's failure to inquire how petitioner could reconcile his 'dramatically different' accounts of the same . . . event does not render insubstantial the evidence supporting the IJ's adverse credibility finding"); *cf. Ming Shi Xue v. BIA*, 439 F.3d 111, 121 (2d Cir. 2006) ("[W]here the perceived incongruities in an asylum applicant's testimony are not plainly obvious, an IJ cannot rely on them to support an adverse credibility ruling without first identifying the alleged inconsistencies for the applicant and giving the applicant an opportunity to address them.").

5

"[T]he BIA and reviewing courts must closely examine each [border] interview before concluding that it represents a sufficiently accurate record of the [noncitizen's] statements to merit consideration in determining" credibility. *Ramsameachire v. Ashcroft*, 357 F.3d 169, 179 (2d Cir. 2004). Here, the agency considered the appropriate factors, and the record supports the agency's conclusion that the border interview was reliable. *See id.* at 180 (identifying factors the BIA should use to evaluate the reliability of the border interview record). Although the interview record does not state that it is a verbatim transcript, it records both the questions posed and Singh's responses. The interview was conducted through a Punjabi interpreter; Singh's answers to questions were responsive and did not suggest difficulty understanding; and he stated at the close of the interview that he understood everything that the interpreter had said and asked. He also initially testified at his merits hearing that he had understood everything the interpreter said to him at the border interview. And although Singh later suggested that his responses may have been mistranslated or inaccurately recorded, he does not raise those issues here. *See Debique v. Garland*, 58 F.4th 676, 684 (2d Cir. 2023) ("We consider abandoned any claims not adequately presented in an appellant's brief, and an appellant's failure

6

to make legal or factual arguments constitutes abandonment." (internal quotation marks omitted)). The interviewer's questions were designed to elicit information about the kidnapping; and the concern here was not the omission of details from his border statement (which could be attributable to the questions posed), but his offer of details that directly contradicted details provided in later statements. Singh's decision to provide those details also undercuts any concern that he was reluctant to share information with the interviewer.

Singh offers three reasons that the agency should not have relied on inconsistencies created by the border interview. First, he asserts that many months elapsed between the alleged events and the interview. But he does not explain why his statements about the same events years later would be more reliable if he could not accurately recall them after only a few months. Second, he argues that his limited education undermines the reliability of the interview, but he does not explain how additional education would have helped him answer simple questions about his own experiences. Third, and more compellingly, Singh notes that the interview was conducted after a difficult, months-long journey. But given the number and significance of the inconsistencies, the agency was not compelled to accept that explanation. *See Majidi*, 430 F.3d at 80; *cf. Ming*

7

*Zhang v. Holder*, 585 F.3d 715, 722 (2d Cir. 2009) (noting that an applicant's "assertions that she was 'nervous' and 'afraid'" do not preclude reliance on a sworn interview statement).

The agency's evaluation of the documentary evidence further supports the adverse credibility determination. "An applicant's failure to corroborate his or her testimony may bear on credibility, because the absence of corroboration in general makes an applicant unable to rehabilitate testimony that has already been called into question." *Biao Yang v. Gonzales*, 496 F.3d 268, 273 (2d Cir. 2007). Singh argues that the agency overlooked or gave insufficient weight to his corroborating evidence, including an affidavit from his father, a hospital record, a letter from his political party, and country conditions evidence. The agency did not err in giving little weight to Singh's father's affidavit because he was an interested party unavailable for cross-examination, and he was not a witness to some of the events recounted. *See Likai Gao v. Barr*, 968 F.3d 137, 149 (2d Cir. 2020) (holding that an "IJ acted within her discretion in according [letters] little weight because the declarants (particularly [the applicant]'s wife) were interested parties and neither was available for cross-examination").

The agency was not required to explicitly address other evidence under the

8

circumstances. *See Xiao Ji Chen v. U.S. Dep't of Just.*, 471 F.3d 315, 336 n.17 (2d Cir. 2006) ("[W]e presume that [the agency] has taken into account all of the evidence before [it], unless the record compellingly suggests otherwise."); *Wei Guang Wang v. BIA*, 437 F.3d 270, 275 (2d Cir. 2006) (explaining that the agency need not "expressly parse or refute on the record each individual argument or piece of evidence offered by the petitioner," so long as it "has given reasoned consideration to the petition, and made adequate findings" (internal quotation marks and citation omitted)). The hospital record, even if credited, could not have rehabilitated Singh's testimony because it described treatment months later, for injuries that—according to Singh—were inflicted in a different politically motivated assault; and the record did not corroborate his allegations about the cause of those injuries. And there are no grounds to conclude that the agency overlooked the party letter or country conditions evidence, which did not corroborate Singh's specific claims of past abuse.

Finally, Singh advances a cursory argument that his CAT claim was based on different facts and should have been assessed separately. His argument appears to be that his CAT claim—and not his asylum claim—was premised in part on allegations of police violence. However, the agency treated those

9

allegations as part of the asylum claim. The agency was not required to separately assess the credibility of Singh's testimony about the police because it "may, either expressly or impliedly, rely on [the maxim, false in one thing, false in everything] to discredit evidence that does not benefit from corroboration or authentication independent of the petitioner's *own* credibility." *Siewe v. Gonzales*, 480 F.3d 160, 170 (2d Cir. 2007) (emphasis in original).

In sum, given the multiple inconsistencies related to an event central to Singh's claim of past persecution, and the lack of reliable corroboration, substantial evidence supports the agency's adverse credibility determination. *See Xiu Xia Lin*, 534 F.3d at 167; *Xian Tuan Ye v. Dep't of Homeland Sec.*, 446 F.3d 289, 294 (2d Cir. 2006) ("Where the IJ's adverse credibility finding is based on specific examples in the record of inconsistent statements . . . about matters material to [a] claim of persecution . . . , a reviewing court will generally not be able to conclude that a reasonable adjudicator was compelled to find otherwise." (quoting *Zhou Yun Zhang v. INS*, 386 F.3d 66, 73 (2d Cir. 2004)). As Singh's claims for asylum, withholding of removal, and CAT relief are based on the same facts, the adverse credibility determination is dispositive. *See Hong Fei Gao*, 891 F.3d at 76.

For the foregoing reasons, the petition for review is DENIED. All pending

10

motions and applications are DENIED and stays VACATED.

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court

11