13-2698
Huang v. Bondi

BIA
Christensen, IJ
A090 695 020

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 23rd day of September, two thousand twenty-five.

PRESENT:
> JON O. NEWMAN,
> DENNY CHIN,
> MICHAEL H. PARK,
> > *Circuit Judges.*

_____

LIANGCHAO HUANG,
> *Petitioner,*

v.                                                    **13-2698**
                                                      **NAC**

PAMELA BONDI, UNITED STATES
ATTORNEY GENERAL,
> *Respondent.*

_____

**FOR PETITIONER:**              Theodore N. Cox, New York, NY.

**FOR RESPONDENT:** Stuart F. Delery, Assistant Attorney General, Civil Division; Francis W. Fraser, Senior Litigation Counsel, Christina J. Martin, Trial Attorney, Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Liangchao Huang, a native and citizen of the People's Republic of China, seeks review of a June 28, 2013, decision of the BIA affirming an April 19, 2012, decision of an Immigration Judge ("IJ") denying his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). *In re Liangchao Huang*, No. A 090 695 020 (B.I.A. June 28, 2013), *aff'g* No. A 090 695 020 (Immig. Ct. N.Y. City Apr. 19, 2012). We assume the parties' familiarity with the underlying facts and procedural history.

We have reviewed both the IJ's and the BIA's decisions. *See Wangchuck v. Dep't of Homeland Sec.*, 448 F.3d 524, 528 (2d Cir. 2006). "We review the agency's factual findings, including adverse credibility findings, under the substantial evidence standard" and "questions of law and the application of law to fact" de novo. *Hong Fei Gao v. Sessions*, 891 F.3d 67, 76 (2d Cir. 2018). "[T]he

2

administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). As the Government contends, several arguments Huang raises are unexhausted and not properly before us. *See Vera Punin v. Garland*, 108 F.4th 114, 124 (2d Cir. 2024) ("[W]hen an argument made to this Court cannot be closely matched up with a specific argument made to the BIA, it has not been properly exhausted and we cannot hear it."). Thus, we address only whether Huang's asylum claim was timely filed and whether he met his burden of proof for withholding of removal and CAT relief.

An asylum claim must be filed within one year of an applicant's entry. *See* 8 U.S.C. § 1158(a)(2)(B). If an applicant establishes "changed circumstances" that affect eligibility for asylum, he is not bound by this one-year time limitation and instead "shall file an asylum application within a reasonable period given those 'changed circumstances.'" *Id.* § 1158(a)(2)(D); 8 C.F.R. § 1208.4(a)(4)(ii). Our review of timeliness and changed circumstances determinations is limited to "constitutional claims or questions of law," 8 U.S.C. § 1252(a)(2)(D); *see id.* § 1158(a)(3), including whether the agency applied the appropriate legal standard

in determining whether an alien qualifies for the changed circumstances exception, *see Shi Jie Ge v. Holder*, 588 F.3d 90, 94–95 (2d Cir. 2009).

The parties do not dispute that Huang entered the United States in 2000 and did not seek asylum until March 2011. At dispute is what pro-democracy activities placed Huang "at risk" of discovery by Chinese authorities, as needed to invoke the changed circumstances exception to the one-year deadline. Huang testified that, in February 2010, he participated in a pro-democracy protest at the Chinese Consulate hosted by the Chinese Democracy Party ("CDP") and went to CDP headquarters. He officially joined the CDP in October 2010 and thereafter attended small group meetings, distributed flyers at protests, donated money, and wrote articles. Huang argues that the agency should have credited his October 2010 activities as triggering the changed circumstances exception, and not his February 2010 activities. We conclude that the agency applied the correct standard. The agency errs by looking solely to the date an alien joins a political party and must look to the applicant's participation in public political activities that would place him "at risk" of persecution if he returned to China. *Id.* at 95. Here, as the agency found, Huang's participation in public pro-democracy protests began in February 2010, so there was no error in using that date,

4

particularly as there was no evidence that Chinese authorities were more likely to become aware that Huang became an official CDP member in October 2010 than they were to know that he protested publicly earlier that year. Thus, the agency's changed circumstances analysis is sound, and the petition is denied as to asylum because Huang does not otherwise argue that he filed within a reasonable time of commencing public activities in early 2010.

Turning to withholding of removal, Huang had to establish that he would "more likely than not" be persecuted on account of a protected ground. 8 C.F.R. § 1208.16(b)(2). To qualify, Huang "must make some showing that authorities in his country of nationality are either aware of his activities or likely to become aware of his activities." *Hongsheng Leng v. Mukasey*, 528 F.3d 135, 143 (2d Cir. 2008). Huang did not meet his burden.

As the agency found, Huang was not credible regarding the authorities' awareness of his activities because his testimony was inconsistent with a letter from his mother, which itself merited only diminished weight as an unsworn statement from an interested party. *See Gao v. Barr*, 968 F.3d 137, 149 (2d Cir. 2020) (holding that the IJ acted within her discretion in discounting letters from interested witnesses who were unavailable for cross-examination); *Y.C. v. Holder*,

5

741 F.3d 324, 334 (2d Cir. 2013) (deferring to the BIA's determination to give "very little evidentiary weight" to an unsworn letter from an interested witness). Huang testified that authorities visited his mother weekly—and at least ten times in total—but his mother mentioned only one visit by authorities. When asked to explain this discrepancy, Huang stated it was "because we normally have this over the phone—the conversation because we speak the local dialect and it's more clear," and his mother dictated the letter to his cousin. The agency was not required to accept this explanation, which does not resolve why his mother did not mention being contacted weekly by authorities, particularly as those visits were the primary basis for Huang's alleged fear of persecution. *See Majidi v. Gonzales*, 430 F.3d 77, 80–81 (2d Cir. 2005) ("A petitioner must do more than offer a plausible explanation for his inconsistent statements to secure relief; he must demonstrate that a reasonable fact-finder would be *compelled* to credit his testimony." (quotation marks omitted)); *see also Hong Fei Gao*, 891 F.3d at 78 (holding that the "probative value" of omissions "depends on whether those facts are ones the witness would reasonably have been expected to disclose").

Finally, the IJ reasonably found that Huang's testimony was implausible. He stated that he stopped calling his mother in March 2011 because he was

6

worried that he was causing her trouble with authorities, but then never asked his father or brothers whether the authorities continued to contact her. The IJ reasonably concluded that if Huang was concerned about his mother, he would have asked his father or brothers, with whom he was in contact and who were in touch with his mother, whether authorities continued to harass her. *See Siewe v. Gonzales*, 480 F.3d 160, 169 (2d Cir. 2007) (concluding that we will uphold an IJ's finding based on an inference drawn from the evidence so long as "the inference is made available to the factfinder by record facts, or even a single fact, viewed in the light of common sense and ordinary experience").

While the adverse credibility determination undermines Huang's claim that the authorities were already aware of his CDP activities, Huang may also establish a well-founded fear of future persecution by showing that Chinese authorities are "likely to become aware of his activities." *Hongsheng Leng*, 528 F.3d at 143. Although Huang published two internet articles on democracy and had his photograph taken at pro-democracy protests, the agency reasonably determined that he did not show that the Chinese government was aware of his articles or could identify him based on the photographs in the record. Absent evidence, Huang's testimony that he will be discovered is speculative and insufficient to

meet his burden.   *See Y.C.*, 741 F.3d at 334; *Huang v. U.S. I.N.S.*, 421 F.3d 125, 129 (2d Cir. 2005) ("In the absence of solid support in the record . . . [an applicant's] fear is speculative at best.").

Because Huang has failed to show he is "more likely than not" to be persecuted, as required for withholding of removal, he cannot demonstrate that it is "more likely than not" that he will be tortured so as to qualify for CAT relief. 8 C.F.R. § 1208.16(b)(2), (c)(2); *see Lecaj v. Holder*, 616 F.3d 111, 119–20 (2d Cir. 2010).

For the foregoing reasons, the petition for review is DENIED.   All pending motions and applications are DENIED and stays VACATED.

<div style="margin-left:40%">

FOR THE COURT:
Catherine O'Hagan Wolfe,
Clerk of Court

</div>